**Michigan Supreme Court**
**Lansing, Michigan**

# Opinion

Chief Justice:
Maura D. Corrigan

Justices:
Michael F. Cavanagh
Elizabeth A. Weaver
Marilyn Kelly
Clifford W. Taylor
Robert P. Young, Jr.
Stephen J. Markman

**FILED JULY 23, 2004**

RALPH ORMBSY AND KIMBERLY ORMSBY,

    Plaintiffs-Appellees,

v                                  No. 123287

CAPITAL WELDING, INC.,

    Defendant-Appellant,

and

MONARCH BUILDING SERVICES, INC.,

    Defendant-Appellee,

and

METROPOLITAN BUILDING SERVICES
and RITE AID OF MICHIGAN,

    Defendants.

_____

RALPH ORMSBY and KIMBERLY ORMSBY,

    Plaintiffs-Appellees,

v                                  No. 123289

CAPITAL WELDING, INC.,

    Defendant-Appellee,

and

MONARCH BUILDING SERVICES, INC.,

 Defendant-Appellant,

and

METROPOLITAN BUILDING SERVICES
and RITE AID OF MICHIGAN,

 Defendants.

_____

BEFORE THE ENTIRE BENCH

TAYLOR, J.

We granted leave to appeal in this case to consider the relationship between the "common work area doctrine" and the "retained control doctrine," and to address the scope of each doctrine. At common law, property owners and general contractors generally could not be held liable for the negligence of independent subcontractors and their employees. In *Funk v Gen Motors Corp,* 392 Mich 91, 104-105; 220 NW2d 641 (1974),[1] however, this Court set forth a new exception to this general rule of nonliability, holding that, under certain circumstances, a general contractor could be held liable under the "common work area doctrine"

---

[1] Overruled in part on other grounds *Hardy v Monsanto Enviro-Chem Sys, Inc,* 414 Mich 29; 323 NW2d 270 (1982).

and, further, that a property owner could be held equally liable under the "retained control doctrine."

In this case, the Court of Appeals reversed the trial court's grant of summary disposition for both defendants, holding that these doctrines are two distinct and separate exceptions to the general rule of nonliability of property owners and general contractors concerning the negligence of independent subcontractors and their employees. We disagree with the Court of Appeals and clarify today that these two doctrines are not two distinct and separate exceptions, rather only one—the "common work area doctrine"—is an exception to the general rule of nonliability for the negligent acts of independent subcontractors and their employees. Thus, only when the *Funk* four-part "common work area" test is satisfied may an injured employee of an independent subcontractor sue the general contractor for that contractor's alleged negligence.

Further, the "retained control doctrine" is a doctrine subordinate to the "common work area doctrine" and is not itself an exception to the general rule of nonliability. Rather, it simply stands for the proposition that when the *Funk* "common work area doctrine" would apply, and the property owner has sufficiently "retained control" over the

construction project, that owner steps into the shoes of the general contractor and is held to the same degree of care as the general contractor. Thus, the "retained control doctrine," in this context, means that if a property owner assumes the role of a general contractor, such owner assumes the unique duties and obligations of a general contractor. Accordingly, we reverse the decision of the Court of Appeals and reinstate the trial court's grant of summary disposition for both defendants.

## I. Facts and Proceedings Below

This case arose out of a construction accident that occurred during the construction of a Rite Aid store in Troy, Michigan. Property owner Rite Aid hired defendant Monarch Building Services, Inc. (Monarch), as the general contractor for the project. Monarch subcontracted the steel fabrication and steel erection work to defendant Capital Welding, Inc. (Capital), which then subcontracted the steel erection work to Abray Steel Erectors (Abray). Plaintiff Ralph Ormsby was employed by Abray as a journeyman ironworker on the site.

Capital delivered the steel for the project, at which time a crew from Abray began erecting the building using the steel. During the unloading process, Abray personnel allegedly disregarded an express warning that Capital had

4

attached to the steel beams that stated, "Under no circumstances are deck bundles or construction loads of any other description to be placed on unbridged joists." The warning also cautioned against loading bundles of steel decking, weighing between two and three tons each, onto the unsecured erected steel structure.

Plaintiff began working on the unsecured joists to properly align the joists into position. To do so, he would strike the unsecured joist with a hammer. While performing this task, there was a sudden shift in an unsecured joist that, coupled with the fact that the joist was loaded with decking, allegedly caused the collapse of the structure, resulting in plaintiff's fifteen foot fall and subsequent injuries.

Plaintiff filed suit against Capital, alleging, among other things, that Capital retained control of and negligently supervised the project, and acquiesced to unsafe construction activities, including loading unwelded bar joists.[2]  Plaintiff later amended his complaint and added the same claims against Monarch.

---

[2] Although both Ormsby and his wife filed complaints, his wife's suit is wholly derivative. Therefore, we use "plaintiff" in the singular.

5

Capital filed a motion for summary disposition contending that there was no genuine issue of material fact regarding whether it retained control over the project because plaintiff failed to present any evidence that he was injured in a common work area. Plaintiff opposed the motion, contending instead that the two doctrines were separate and distinct, and thus Capital could be held liable under the "retained control doctrine" even if he failed to satisfy the elements of the "common work area doctrine."

The trial court agreed with Capital and granted its motion. Combining the doctrines of "common work area" and "retained control," the trial court determined that "the retained control theory applies only in situations involving 'common work areas.'" The trial court further stated, "This Court finds that there was no common work area that created a high degree of risk to a significant number of workers" and "there is no evidence that other subcontractors would work on the erection of the steel structure." That is, the trial court found that plaintiff had failed to satisfy two elements of the "common work area doctrine," and thus no genuine issue of material fact existed regarding whether either doctrine applied to Capital.

Following Capital's successful motion, Monarch filed its own motion for summary disposition under MCR 2.116(C)(10), contending that plaintiff had failed to provide any evidence to satisfy each of the four elements of the "common work area doctrine." In response, plaintiff moved for leave to amend his complaint to assert that plaintiff was in fact injured in a "common work area" as defined in *Funk*. The trial court granted Monarch's motion for the same reasons that it had granted the earlier Capital motion and denied plaintiff's motion to amend his complaint, ruling that the amendment would be futile in light of its ruling that there was no genuine issue of material fact regarding the existence of a common work area.

The Court of Appeals reversed in part, holding (1) that the "common work area doctrine" and "retained control doctrine" are two distinct and separate exceptions and (2) that evidence that "employees of other subcontrators would be or had been working in the same area where plaintiff's injury occurred . . . create[d] a genuine issue of material fact regarding whether plaintiff's injury occurred in a common work area." 255 Mich App 165, 188; 660 NW2d 730 (2003). Accordingly, the Court permitted plaintiff's

"retained control" claim to proceed against Capital,[3] and permitted plaintiff's "common work area" claim to proceed against both Capital and Monarch.  Further, the Court held that the trial court had erred in denying plaintiff's motion to amend his complaint concerning his allegations that he had been injured in a "common work area."  Both defendants filed applications for leave to appeal with this Court, which we granted.[4]

## II. Standard of Review

Summary disposition under either MCR 2.116(C)(8) or (C)(10) presents an issue of law for our determination and, thus, "[w]e review a trial court's ruling on a motion for summary disposition de novo." *Straus v Governor*, 459 Mich 526, 533; 592 NW2d 53 (1999).

When a trial court grants summary disposition pursuant to MCR 2.116(C)(8), or (C)(10), the opportunity for the nonprevailing party to amend its pleadings pursuant to MCR 2.118 should be freely granted, unless the amendment would

---

[3] Regarding Monarch, the Court of Appeals concluded that the trial court's order granting Monarch summary disposition on plaintiff's retained control theory was proper because no genuine issue of material fact existed that Monarch had not retained control over plaintiff's work.

[4] 469 Mich 947 (2003).

**8**

not be justified. MCR 2.116(I)(5). An amendment, however, would not be justified if it would be futile. *Weymers v Khera*, 454 Mich 639, 658; 563 NW2d 647 (1997). We will not reverse a trial court's decision to deny leave to amend pleadings unless it constituted an abuse of discretion. *Id.* at 654.

### III. Analysis

As discussed briefly above, at common law, property owners and general contractors generally could not be held liable for the negligence of independent subcontractors and their employees. However, in *Funk*, this Court set forth an exception to this general rule of nonliability. There, property owner General Motors (GM) hired general contractor Darin & Armstrong (Darin) to expand one of its plants. The general contractor, in turn, subcontracted a portion of the work to Funk's employer, Ben Agree Company. Funk was injured in a fall from a platform and sued GM and Darin, alleging that each owed him a duty to implement reasonable safety precautions and to ensure that workers on the project used adequate safety equipment to protect against falls. GM and Darin defended on the basis that, under the common law, neither had a duty to protect plaintiff from these types of dangers. Departing from established law, this Court set forth an exception in circumstances

**9**

involving construction projects and affirmed the verdict against Darin:

> We regard it to be part of the business of a general contractor to assure that reasonable steps within its supervisory and coordinating authority are taken to guard against readily observable, avoidable dangers in common work areas which create a high degree of risk to a significant number of workmen. [*Funk*, *supra* at 104.]

That is, for a general contractor to be held liable under the "common work area doctrine," a plaintiff must show that (1) the defendant, either the property owner or general contractor, failed to take reasonable steps within its supervisory and coordinating authority (2) to guard against readily observable and avoidable dangers (3) that created a high degree of risk to a significant number of workmen (4) in a common work area.

Having established that a general contractor could be held liable for negligence regarding job safety, the Court then addressed the potential liability of a property owner. The Court held that, under the new rule, a property owner could itself be liable if it had "retained control" in such a way that it had effectively stepped into the shoes of the general contractor and been acting as such. The Court first stated:

> This analysis [i.e., the "common work area" test quoted above in reference to the general

**10**

contractor] would not *ordinarily* render a "mere" owner liable. In contrast with a general contractor, the owner typically is not a professional builder. Most owners visit the construction site only casually and are not knowledgeable concerning safety measures. . . . Supervising job safety, providing safeguards, is not part of the business of a typical owner. [*Id.* at 104-105 (emphasis added).]

Then it continued by outlining the circumstances in which the ordinary rule would not control, saying:

[T]he law does not . . . absolve an owner who acts in a superintending capacity and has knowledge of high degrees of risk faced by construction workers from responsibility for failing to require observance of reasonable safety precautions. [*Id.* at 106-107.]

The Court's use of the word "ordinarily," italicized above, considered in conjunction with its statement that a property owner cannot escape liability if that owner acts in a "superintending capacity and has knowledge of high degree of risk faced by construction workers," necessarily implies that, under certain circumstances, the "common work area" doctrine *would* render a property owner liable.[5] Thus, it is clear that this Court was applying the identical

---

[5] The Court also stated that "[a]n *owner* is responsible if he does not truly delegate—if he retains 'control' of the work—or if, by rule of law or statute, the duty to guard against the risk is made 'nondelegable.'" *Id.* at 101 (emphasis added).

"common work area" analysis to GM, as property owner, on the basis that it "retained control."

Applying these new doctrines to the facts in *Funk*, the Court noted that Funk had largely created his own circumstances because he essentially "dug a hole and . . . [he] fell into it," *id*. at 100. The general contractor, Darin, was fully knowledgeable of the subcontractor's failure to implement reasonable safety precautions for a readily apparent danger where such precautions likely would have prevented Funk's fall. Further, the Court held that GM had exercised "an unusually high degree of control over the construction project," and thus was also liable for Funk's injuries. *Id*. at 101. Thus, this Court stated that the evidence supported a finding of GM's tacit, if not actual, control of safety measures or the lack thereof "*in the highly visible common work areas*." *Id*. at 107.

Accordingly, we conclude that, on the basis of this Court's analysis in *Funk*, the "common work area doctrine" and the "retained control doctrine" are not two distinct and separate exceptions. Rather, the former doctrine is an exception to the general rule of nonliability of property owners and general contractors for injuries resulting from the negligent conduct of independent subcontractors or their employees. Thus, only when the *Funk* four-part "common work

area" test is satisfied may a general contractor be held liable for alleged negligence of the employees of independent subcontractors regarding job safety. The "retained control" control doctrine is merely a *subordinate* doctrine, applied by the *Funk* Court to the owner defendant, that has no application to general contractors.[6]

In her dissent in *Funk*, Justice Coleman was concerned that the "common work area doctrine" would devolve in practice into a strict liability regime where general contractors would be responsible for any common work area injury that an employee of an independent subcontractor suffers. *Id.* at 116. Although Justice Coleman's concerns have not come to fruition,[7] *Funk* has morphed from a straightforward doctrine conferring liability, under certain circumstances, on property owners or general contractors for the negligence of independent subcontractors, into a "two

---

[6] The *Funk* Court applied the "retained control" doctrine to the property owner defendant in that case. The owner of the subject property in this case, Rite Aid, was dismissed early in the litigation, and its liability is not at issue. It is therefore unnecessary to address owner liability, and we express no opinion regarding the *Funk* "retained control" doctrine as it applies to property owners.

[7] Neither defendant nor any brief amicus curiae has urged the Court to overrule *Funk,* but only to clarify the nature of the *Funk* holding.

**13**

exception" creation.  Indeed, the instant opinion by the

Court of Appeals outlined that progression[8] and proceeded to

erroneously conclude that even an entity that is neither a

---

[8] As the Court of Appeals read the cases, *Erickson v Pure Oil Corp*, 72 Mich App 330, 335-336; 249 NW2d 411 (1976), distinguished the doctrines of "retained control" and "common work area" and applied them separately; *Signs v Detroit Edison Co*, 93 Mich App 626, 632; 287 NW2d 292 (1979), addressed general contractor liability based on "retained control" even though it found that the plaintiff was not injured in a "common work area"; *Samhoun v Greenfield Constr Co*, Inc, 163 Mich App 34, 45; 413 NW2d 723 (1987), blended the doctrines of "retained control" and "common work area"; *Johnson v Turner Constr Co*, 198 Mich App 478, 480; 499 NW2d 27 (1993), separately addressed the two doctrines; *Phillips v Mazda Motor Mfg (USA) Corp*, 204 Mich App 401, 408; 516 NW2d 502 (1994), addressed the doctrines of "retained control" and common work area" separately; *Hughes v PMG Building*, 227 Mich App 1, 8; 574 NW2d 691 (1997), discussed the "common work area doctrine" without reference to the "retained control doctrine"; *Kubisz v Cadillac Gage Textron, Inc*, 236 Mich App 629, 636; 601 NW2d 160 (1999), discussed the "retained control doctrine" as a "second main exception" to the general rule of nonliability for the negligence of an independent contractor without mentioning the four-part test in *Funk* or addressing whether the plaintiff's injury occurred in a "common work area"; *Candelaria v B C Gen Contractors, Inc*, 236 Mich App 67, 74; 600 NW2d 348 (1999), stated that the "retained control doctrine" applies only in those situations involving "common work areas."

Unfortunately, our post-*Funk* decisions that have addressed the "retained control" and "common work area" doctrines have been plurality opinions, and, as explained in *Dean v Chrysler Corp*, 434 Mich 655, 661 n 7; 455 NW2d 699 (1990), are not binding authority.  See *Beals v Walker*, 416 Mich 469; 331 NW2d 700 (1982), *Plummer v Bechtel Corp*, 440 Mich 646; 489 NW2d 66 (1992), and *Groncki v Detroit Edison*, 453 Mich 644; 557 NW2d 289 (1996).

**14**

property owner nor a general contractor (subcontractor Capital) can be liable under *Funk*.


## IV. Application

To establish the liability of a general contractor under *Funk*, a plaintiff must prove four elements: (1) that the defendant contractor failed to take reasonable steps within its supervisory and coordinating authority (2) to guard against readily observable and avoidable dangers (3) that created a high degree of risk to a significant number of workmen (4) in a common work area.[9] *Id*. at 104.

----

[9] With reference to element four—a common work area—we agree with the following statement from *Hughes, supra* at 8-9, in which the court concluded that an overhang on a porch did not constitute a common work area:

> If the top of the overhang or even the overhang in its entirety were considered to be a "common work area" for purposes of subjecting the general contractor to liability for injuries incurred by employees of subcontractors, then virtually no place or object located on the construction premises could be considered not to be a common work area. We do not believe that this is the result the Supreme Court intended. This Court has previously suggested that the Court's use of the phrase "common work area" in *Funk, supra*, suggests that the Court desired to limit the scope of a general contractor's supervisory duties and liability. We thus read the common work area formulation as an effort to distinguish between a situation where employees of a subcontractor were working on a unique project in isolation from other workers and a
>
> (continued…)

*Funk* is simply inapplicable to Capital in this case because Capital was neither the property owner nor the general contractor. Thus, the trial court's order granting it summary disposition was proper. Accordingly, we reverse the judgment of the Court of Appeals and reinstate the trial court's order granting summary disposition for Capital.[10]

Because Monarch was the general contractor, the "common work area doctrine" may be applicable. The trial court determined that plaintiff had failed to satisfy element three, danger creating a high degree of risk to a

---

(…continued)

> situation where employees of a number of subcontractors were all subject to the same risk or hazard. In the first instance, each subcontractor is generally held responsible for the safe operation of its part of the work. In the latter case, where a substantial number of employees of multiple subcontractors may be exposed to a risk of danger, economic considerations suggest that placing ultimate responsibility on the general contractor for job safety in common work areas will "render it more likely that the various subcontractors . . . will implement or that the general contractor will himself implement the necessary precautions and provide the necessary safety equipment in those areas." *Funk, supra* at 104 (citations omitted).

[10] Justice Kelly has concluded in her partial dissent that plaintiffs' lawsuit against Capital should be allowed under *Funk*. This deviates from *Funk* because *Funk* only authorized claims against owners and general contractors. Capital is neither.

**16**

significant number of workmen, and element four, a common work area, and thus granted summary disposition for Monarch. This approach is consistent with *Funk* and reflects the understanding that a plaintiff's failure to satisfy *any* one of the four elements of the "common work area doctrine" is fatal to a *Funk* claim.[11]

The Court of Appeals, misapprehending the merit of the trial court's approach, reversed the decision of the trial court on the basis that it erred in finding that no genuine issue of material fact existed regarding element four—a "common work area." Regardless of whether a genuine issue of material fact existed with respect to element four, reversal was erroneous because the Court of Appeals overlooked the fact that the trial court's order was premised not just on a deficiency of evidence regarding element four, but also on the fact that no genuine issue of material fact existed regarding element three—danger creating a high degree of risk to a significant number of

---

[11] It is potentially confusing and, indeed, may have misled some courts, that a test with four elements has been referred to by only one of its elements—the "common work area." What is commonly referred to as the "common work area doctrine," however, has four separate elements, *all* of which must be satisfied before that doctrine may apply.

workmen.[12]    Inasmuch as *Funk* requires a plaintiff to establish all four elements of the "common work area doctrine" to prevail, the trial court ruling should have been affirmed.  Thus, the trial court did not abuse its discretion by refusing to allow plaintiff to amend his complaint concerning the existence of a "common work area," because such an amendment would have been futile. Accordingly, we reverse the judgment of the Court of

---

[12] Justice Kelly asserts in her dissent that the Court of Appeals disagreed with the trial court's conclusion that plaintiff had failed to establish a genuine issue of material fact that a high degree of risk to a significant number of workers existed.  This is incorrect.  The Court of Appeals specifically stated that it limited its discussion and decision to the question whether plaintiff was injured in a common work area.  255 Mich App at 188. Justice Kelly goes on to indicate that she would find a genuine issue of material fact whether a significant number of workers were exposed to danger on the basis that a mason was right below plaintiff when he fell, and because any worker at the site would be working in, around and under the steel structure after it was erected and all such workers would be exposed to an extremely dangerous condition if the structure was not competently constructed. We disagree.  The fact that one worker was below plaintiff when he fell certainly does not establish a genuine issue of material fact regarding whether a high degree of risk to a *significant* number of workers existed.  Justice Kelly's vague reference to "any worker" being exposed to danger if the structure was not competently construed is likewise insufficient to create a genuine issue of material fact. The high degree of risk to a significant number of workers must exist when the plaintiff is injured; not after construction has been completed.

Appeals and reinstate the trial court's grant of summary disposition for Monarch.

## V. Conclusion

The doctrines of "common work area" and "retained control" are not two distinct and separate exceptions. Rather, under the "common work area doctrine," a general contractor may be held liable for the negligence of its independent subcontractors only if all the elements of the four-part "common work area" test set forth in *Funk* have been satisfied. Further, the "retained control doctrine" is subordinate to the "common work area doctrine" and simply stands for the proposition that when the "common work area doctrine" would apply, and the property owner has stepped into the shoes of the general contractor, thereby "retaining control" over the construction project, that owner may likewise be held liable for the negligence of its independent subcontractors.[13]  Because neither Capital nor Monarch satisfies all four elements of the "common work area" doctrine, we reverse the judgment of the Court of

---

[13] We reiterate that we are merely clarifying *Funk* and we express no opinion concerning whether the *Funk* Court properly imposed liability on an owner under the "retained control" doctrine.

Appeals and reinstate the trial court's grant of summary disposition for both defendants.

                              Clifford W. Taylor
                              Maura D. Corrigan
                              Elizabeth A. Weaver
                              Robert P. Young, Jr.
                              Stephen J. Markman

**STATE OF MICHIGAN**

**SUPREME COURT**

RALPH ORMSBY AND KIMBERLY ORMSBY,

    Plaintiffs-Appelleess,

v                                     No. 123287

CAPITAL WELDING, INC.,

    Defendant -Appellant,

and

MONARCH BUILDING SERVICES, INC.,

    Defendant-Appellee,

and

METROPOLITAN BULDING SERVICES
and RITE AID OF MICHIGAN,

    Defendants.
_____

RALPH ORMSBY AND KIMBERLY ORMSBY,

    Plaintiffs-Appellees,

v                                     No. 123289

CAPITAL WELDING, INC.,

    Defendant-Appellee,

and

MONARCH BUILDING SERVICES, INC.,

    Defendant-Appellant,

and

METROPOLITAN BUILDING SERVICES
and RITE AID OF MICHIGAN,

    Defendants.

_____

CAVANAGH, J. (*concurring in result only*).

I concur in the result reached by the majority. However, I write separately because I would reach that result regardless of whether the doctrines of retained control and common work area are separate doctrines. I agree with the majority that the trial court's grant of summary disposition to both defendants should be reinstated because the dispositive issues in this case are not affected by whether the doctrines are separate or one is subordinate to the other. I, however, cannot join the majority because this Court has routinely treated the doctrines of retained control and common work area as two separate and distinct doctrines. See *Plummer v Bechtel Constr Co*, 440 Mich 646; 489 NW2d 66 (1992); *Groncki v Detroit Edison Co*, 453 Mich 644; 557 NW2d 289 (1996).

Regardless of whether the doctrine of retained control is subordinate to or separate from the common work area doctrine, it is only applicable to property owners, and because neither defendant Capital nor defendant Monarch is

2

the property owner, the trial court was correct to grant each defendant's motion for summary disposition with respect to the doctrine of retained control.

Further, the common work area doctrine does not apply to subcontractors, thus the trial court was correct to grant defendant Capital's motion for summary disposition with respect to common work area liability. See *Funk v Gen Motors Corp*, 392 Mich 91, 104; 220 NW2d 641 (1974). The trial court was also correct to grant defendant Monarch's motion for summary disposition with respect to the common work area doctrine. Regardless of when the danger to a significant number of workers must exist, plaintiff failed to show that a genuine issue of material fact existed about whether there was danger creating a high degree of risk to a significant number of workers. Because plaintiff failed to establish a genuine issue of material fact and because defendant Monarch was entitled to judgment as a matter of law, the trial court was correct to grant defendant Monarch's motion for summary disposition. Thus, I concur in the result only.

Michael F. Cavanagh

3

# S T A T E   O F   M I C H I G A N

## SUPREME COURT

RALPH ORMSBY AND KIMBERLY ORMSBY,

    Plaintiffs-Appellees,

v                                    No. 123287

CAPITAL WELDING, INC.,

    Defendant-Appellant,

and

MONARCH BUILDING SERVICES, INC.,

    Defendant-Appellee,

and

METROPOLITAN BUILDING SERVICES
and RITE AID OF MICHIGAN,

    Defendants.
_____

RALPH ORMSBY and KIMBERLY ORMSBY,

    Plaintiffs-Appellees,

v                                    No. 123289

CAPITAL WELDING, INC.,

    Defendant-Appellee,

and

MONARCH BUILDING SERVICES, INC.,

    Defendant-Appellant,

and

METROPOLITAN BUILDING SERVICES
and RITE AID OF MICHIGAN,

     Defendants-Not participating.
_____

KELLY, J. (*concurring in part and dissenting in part*).

This Court granted leave limited to whether the retained control doctrine and the common work area doctrine are separate and to a discussion of the scope of each doctrine. 469 Mich 947 (2003). The majority holds that the doctrines are not separate as applied to general contractors who utilize subcontractors. *Ante* at 3-4.

I respectfully dissent. I believe that the retained control doctrine and the common work area doctrine are distinct theories of liability. They are founded on different premises. Like all common law tort theories, they reinforce distinct social norms.[1]

The retained control doctrine applies to one who engages an independent contractor but retains actual control over the manner in which the work is performed. It imposes a duty to ensure that the contractor exercises due

_____

[1] See generally, 1 Dobbs, The Law of Torts, Aims, Policies and Methods of Tort Law, Ch 1, Topic B, p 12 ff.

care for the safety of others. See 2 Restatement of Torts 2d, § 414, p 387. It deters undesirable conduct.

The common work area doctrine arises from the characteristics of common work areas and the efficiency of imposing responsibility on the entity that has responsibility over the entire area. *Funk v Gen Motors Corporation*, 392 Mich 91, 104; 220 NW2d 641 (1974), overruled in part on other grounds by *Hardy v Monsanto Enviro-Chem Systems, Inc*, 414 Mich 29; 323 NW2d 270 (1982).

Whether either of these doctrines applies in a given case is a question of fact. The majority affirms the trial court's determination that plaintiff failed to create a genuine issue of material fact on the third element of the common work area doctrine. The trial court held that plaintiff failed to establish that there was a danger creating a high degree of risk to a significant number of workers.[2] *Ante* at 18. The Court of Appeals held that plaintiff presented evidence that other workers "would be or had been working in the same area where plaintiff's injury occurred". 255 Mich App 165, 188; 660 NW2d 730 (2003).

---

[2] See *Groncki v Detroit Edison Co*, 453 Mich 644, 662; 557 NW2d 289 (1996) (Brickley, C.J.), citing *Funk, supra* at 104.

3

Plaintiff testified that a mason was working "right below" him when the steel structure collapsed. This is evidence that other workers were in, around, and under the structure while it was being erected. It is reasonable to infer that other workers would continue to be in, on, and around it as construction continued. If the structure were not built competently, an extremely dangerous condition would exist that the structure would collapse. It is of no moment that there happened to be only one worker in the area at the time of the accident.

### The Court of Appeals Decision is Correct

I agree with the Court of Appeals. Plaintiff's testimony is sufficient to create a genuine issue of material fact regarding whether a significant number of workers in addition to the mason were exposed to the danger.

Moreover, plaintiff presented evidence that defendant Capital Welding retained control over the manner in which the work of Capital's subcontractor, Abray, was performed. Capital's field superintendent stated that he instructed Abray's ironworkers on proper erection. Plaintiff, Abray's

employee, testified that Capital's superintendent instructed him on particular aspects of the job.[3]

The contract between Capital and Monarch obligated Capital to undertake safety precautions for the steel erection work. Capital's field superintendent stated that he had the authority to remove a contractor from the site for safety violations. Therefore, Capital retained its responsibility to ensure that the steel was erected safely after subcontracting the work to Abray, plaintiff's employer.

An analogy between *Funk* and this case is appropriate. *Funk* did not explicitly limit its reasoning to landowners and general contractors. The landowner there was liable to its contractor's employee because it retained control over the safety precautions implemented on the site. See *Funk* at 107-108. In this case, plaintiff presented evidence that Capital retained control over the methods and safety procedures for Abray's erection of the steel. Capital stands in the identical position to plaintiff as the landowner in *Funk* did as to Funk. Accordingly, it was not

---

[3] Plaintiff was told to fabricate lugs that would be welded to the structure's columns.

entitled to summary disposition on the proposition that it could not be liable to its contractor's employee.

However, with respect to Monarch, plaintiff failed to establish that Monarch had anything more than general oversight of the construction. This is insufficient to establish liability under either the common work area doctrine or the retained control doctrine. *Johnson v Turner Constr Co,* 198 Mich App 478, 480; 499 NW2d 27 (1993). Monarch was entitled to summary disposition.

## Possible Unintended Results of the
## *DeShambo and Ormsby Decisions*

*DeShambo*[4] and *Ormsby* read together could have unfortunate unintended results in future cases. Under the tort reform statutes, with few exceptions, liability is no longer joint but only several. MCL 600.2956. It is based on fault. MCL 600.2957(1). The fault of a party is determined by the trier of fact regardless of whether the party can be held legally liable. MCL 600.6304(1).

---

[4] This case was argued and submitted together with *DeShambo v Anderson,* 471 Mich ___ ; ___ NW2d ___ (2004). *DeShambo* holds that a landowner is not liable for an independent contractor's negligence that injures an employee of that contractor who is engaged in an inherently dangerous activity. Slip op at ___. The analysis in *Ormsby* could logically be extended to preclude liability of a landowner under the combined common work area/retained control doctrine as well.

6

However, an injured individual can recover only from a party that can be held legally liable. The trier of fact may assign fault to one who engages an independent contractor and then negligently directs the actions of that contractor. But under today's decisions in *Ormsby* and *DeShambo*, such an employer, landowner or otherwise, could not be held liable unless an injury occurs in a common work area. Hence, employers now can conceivably escape all liability for their own negligence in a given accident.

I believe that this result is not consistent with the principles underlying the common law. It is inconsistent, also, with the intent of the tort reform statutes. A negligent actor should be legally liable for his actions. Because the majority's decision undermines this principle, I disagree and would affirm the decision of the Court of Appeals.

Marilyn Kelly