# Order

Michigan Supreme Court
Lansing, Michigan

April 10, 2015

Robert P. Young, Jr.,
Chief Justice

Stephen J. Markman
Mary Beth Kelly
Brian K. Zahra
Bridget M. McCormack
David F. Viviano
Richard H. Bernstein,
Justices

148928-9

DOUGLAS LATHAM,
      Plaintiff-Appellee,

v

BARTON MALOW COMPANY,
      Defendant-Appellant.

SC: 148928
COA: 312141
Oakland CC: 2004-059653-NO

_____/

DOUGLAS LATHAM,
      Plaintiff-Appellee,

v

BARTON MALOW COMPANY,
      Defendant-Appellant.

SC: 148929
COA: 313606
Oakland CC: 2004-059653-NO

_____/

On March 10, 2015, the Court heard oral argument on the application for leave to appeal the February 4, 2014 judgment of the Court of Appeals. On order of the Court, the application is again considered, and it is DENIED, because we are not persuaded that the questions presented should be reviewed by this Court.

MARKMAN, J. (*dissenting*).

I respectfully dissent from this Court's order denying defendant's application for leave to appeal. This case presents a significant issue arising from modern precedents in which this Court has departed from common-law understandings concerning the responsibilities of general contractors for the negligence of subcontractors and their employees. There has, in my judgment, been clear error here in applying these precedents and, accordingly, I would reverse the judgment of the Court of Appeals and remand to the trial court with instructions to grant summary disposition in favor of defendant.

Plaintiff was employed as a carpenter by subcontractor B&H Construction to work on the construction of a new high school, as to which project defendant served as the general contractor. Plaintiff was charged with the installation of dry wall on top of a mezzanine that was elevated 17 feet above the ground. Unlike every other worker to do work atop the mezzanine, plaintiff and a partner employed a scissors lift to elevate themselves and their materials onto the mezzanine. When the lift reached the proper

height, plaintiff noticed that because it was parked at an angle, there was a gap between the mezzanine and the lift. Nonetheless, plaintiff and his partner decided to begin moving materials onto the mezzanine from the lift. While they were doing so, a piece of dry wall snapped, and plaintiff slipped through the gap and fell 17 feet, seriously and permanently injuring his feet. Plaintiff brought suit against defendant, relying on the "common work area" doctrine to assert his claim.

Other workers accessing the same mezzanine employed a ladder for this purpose and then used a forklift to raise their materials onto the mezzanine. This method did not require the use of fall protection equipment. However, the method used by plaintiff *did* require such equipment because it involved the possibility of having to traverse a gap between two platforms. Plaintiff's claim is that defendant failed to install hook points for an alternative "double lanyard" system that would have prevented his fall. Plaintiff, however, has presented no evidence (1) that any other subcontractor, or any of its workers (but for his partner), contemplated using the method that he employed to ascend to the mezzanine, (2) that any other employee ascended as he did without fall protection equipment, or (3) that as a result of these circumstances any other worker employed by any other subcontractor on the site was exposed to the same risk that led to his own injury.

Under the common law, plaintiff's claim clearly would have been barred because a general contractor "could not be held liable for the negligence of independent subcontractors and their employees." *Ormsby v Capitol Welding, Inc*, 471 Mich 45, 48 (2004). This Court, however, created an exception to the common-law rule, which is known as the "common work area" doctrine. *Funk v Gen Motors Corp*, 392 Mich 91, 104 (1974). Under this exception, a general contractor *can* be held liable for the negligence of a subcontractor or its employees if the plaintiff can show that

> (1) the defendant, either the property owner or general contractor, failed to take reasonable steps within its supervisory and coordinating authority (2) to guard against readily observable and avoidable dangers (3) that created a high degree of risk to a significant number of workmen (4) in a common work area. [*Ormsby*, 471 Mich at 54.]

In creating this exception, this Court opined that "[p]lacing ultimate responsibility on the general contractor for job safety in common work areas will, from a practical, economic standpoint, render it more likely that . . . necessary precautions" will be implemented and "necessary safety equipment" provided, *Funk*, 392 Mich at 104, while the dissent observed that the exception represented a "significant departure from time tested theories of tort liability" and that general contractors must be "prepared to assume responsibility for any injury received by the employee of a subcontractor, no matter how negligent the employee may be," *id*. at 116 (Coleman, J., dissenting).

It is not my intention to take issue with either the creation of the "common work area" exception in *Funk* or with the elaboration of this exception in the subsequent decisions of *Ormsby* and *Latham v Barton Malow Co*, 480 Mich 105 (2008). Rather, it is my intention only to suggest that this Court bears a continuing obligation to the bench and bar, and to those businesses and employees engaged in the construction industry, to clearly limn the nature and breadth of the "common work area" exception. The exception is a product of this Court, and it is our responsibility to provide reasonable guidance about what we mean by it. The instant case illustrates well the confusion that the exception has generated.

In shaping the "common work area" doctrine, we have asserted that it is *not* to be applied in a manner that imposes strict liability. *Latham*, 480 Mich at 113-114 ("To hold that the unavoidable height *itself* was a danger sufficient to give rise to a duty would essentially impose on a general contractor strict liability . . . . This has never been the law."). Rather, "[i]n *some* instances, as to *some* risks, it will appear unwarranted to impose the responsibility on anyone other than the immediate employer of the workman . . . ." *Funk*, 392 Mich at 109-110 (emphasis added).

When this Court created the doctrine in *Funk*, the plaintiff had been injured as the result of a risk in the workplace that was shared by almost every other worker. It was in *that* situation that we determined that the law should "discourage those in control of a worksite from ignoring or being careless about unsafe working conditions . . . ." *Latham*, 480 Mich at 112. We noted further that the

> failure to provide safety equipment for the men working along the steel did not represent just an *occasional lapse* . . . . Iron workers . . . and pipe fitters and electricians . . . were exposed to *similar risks*. [*Funk*, 392 Mich at 103 (emphasis added).]

Under *Funk* then, the "common work area" doctrine was to apply only in situations in which a "significant" number of workers were exposed to a "similar risk" to that which caused plaintiff's injury. It is only in those situations that it makes sense to hold the *general contractor* liable on the grounds that it is the only entity in a position to ameliorate a risk that is presumably *pervasive* or *common* throughout the workplace. On the other hand, it makes little sense to hold the general contractor liable for injuries resulting from an isolated risk merely because there are other workers in the same workplace exposed to other isolated risks. It is precisely in such a situation that it is "unwarranted to impose the responsibility on anyone other than the immediate employer of the workman . . . ." *Id*. at 109-110.

That is, the "common work area" exception to the common-law rule that the general contractor cannot be held liable for the negligence of subcontractors and their employees must take cognizance of at least the following: (1) the *breadth* of the risk that

the plaintiff faced in terms of calculating the number of uninjured workers who were exposed to the *same* risk and (2) the proper level of generality by which to *characterize* and *define* the specific risk incurred by the plaintiff and thereby to calculate the number of uninjured workers who were exposed to that same risk.  To overgeneralize the risk and define it in an excessively broad manner is to threaten "strict liability" applications of the exception, and the expansion of the exception to a point at which it displaces the general rule; therefore, the risk must be circumscribed more narrowly than the mere risk posed by heights.  However, to define the nature of the risk overly specifically, and in an excessively narrow manner, is to render the exception increasingly irrelevant; accordingly, the risk must be defined more generally than in terms only of workers who used a scissors lift without fall protection equipment to elevate themselves to the mezzanine level 17 feet above the ground and were then required to traverse a 18-inch gap while transferring materials from the lift onto the mezzanine.  This Court today offers no guidance on either of these matters and thus allows the lower courts to transform a relatively narrowly understood and commonsensical exception to a longstanding common-law rule into an entirely revamped rule in which traditional legal duties and obligations on construction worksites are inadvertently, but significantly, being redefined.

Plaintiff here was permitted to proceed with his claim even though he failed to present evidence that a "significant" number of workers were exposed to the specific risk that ultimately led to his injury.  Rather, he merely asserted that other workers from other trades had worked on the same mezzanine, and this was accepted by the lower courts as sufficient to establish that there was a situation creating a "high degree of risk to a significant number of workmen . . . in a common work area." *Ormsby*, 471 Mich at 54.  This Court, however, responded in an earlier opinion that this analysis was defective and that plaintiff must  instead show that there were a significant number of workers exposed to the "danger of *working at heights without fall protection equipment*" in order to prevail.  *Latham*, 480 Mich at 114.  It was not enough for plaintiff to assert broadly and peremptorily that others were exposed to the "similar risk" of working at heights.  Nonetheless, on remand, plaintiff made a virtually identical showing to the one he made before our remand, and he has yet again prevailed on the merits.

Plaintiff's injury occurred while he was incurring a risk shared by only a single other person at the worksite.  He was injured while he was ascending to the mezzanine by

scissors lift, a method that no other worker at the worksite employed, much less while lacking the required fall protection equipment. Even overlooking plaintiff's personal responsibility for this risk having arisen, unlike the failure of the general contractor in *Funk*, defendant's failure to ensure that plaintiff used fall protection equipment *did* represent an "occasional lapse." *No one else* save for his partner-- indeed not a single employee of any other contractor-- was exposed to anything approximating the *same risk* as plaintiff. In the instant situation, unlike in *Funk*, it is entirely "unwarranted to impose the responsibility on anyone other than the immediate employer of the workman . . . ." *Funk*, 392 Mich at 109-110.

As a result of the Court of Appeals' analysis, a general contractor can now be held liable for a workplace injury arising from a risk faced by no other workers as long as the risk can either be defined in a sufficiently encompassing manner to bring within its scope workers who in all reality have faced a distinctive risk from that of the injured plaintiff or aggregated with other risks by clever exercises in classification. It is not the proper function of this Court to act as an alternative to the Occupational Safety and Health Administration by scanning the workplace to assess whether there are random defects or hazards that can be accumulated and aggregated so that an individualized and discrete risk can be recharacterized as one faced by a "significant" number of employees and the general contractor can become legally responsible. The goal of the "common work area" doctrine is to "discourage those in control of a worksite from ignoring or being careless about unsafe working conditions," *Latham*, 480 Mich at 112, not to impose liability for risks unrelated to the injury that the plaintiff actually suffered. Plaintiff here failed to present evidence that he was injured as the result of a risk shared in common with any other worker, much less a "significant" number of other workers, and therefore defendant is entitled to summary disposition. If there is a question concerning the certitude of that observation, this appeal nonetheless merits a grant of leave in order to address and clarify the issues that have been raised by this Court's creation of the "common work area" exception to the rule of nonliability of general contractors for the negligence of their subcontractors and those subcontractors' employees.



I, Larry S. Royster, Clerk of the Michigan Supreme Court, certify that the foregoing is a true and complete copy of the order entered at the direction of the Court.

April 10, 2015



t0407

Clerk