*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

KEVIN GARY,

        Plaintiff-Appellant,

v

FARMERS INSURANCE EXCHANGE,

        Defendant-Appellee,

and

MEIASIA NORTON,

        Defendant.

FOR PUBLICATION
September 7, 2023
9:00 a.m.

No. 361880
Wayne Circuit Court
LC No. 19-017342-NI

Before: HOOD, P.J., and SHAPIRO and YATES, JJ.

PER CURIAM.

In this first-party no-fault action, plaintiff challenges the trial court's order granting summary disposition under MCR 2.116(C)(10) (no genuine issue of material fact) in favor of defendant Farmers Insurance Exchange (Farmers). Plaintiff argues that the trial court erred by (1) applying MCL 500.3173a to statements made during litigation; and (2) finding plaintiff committed a fraudulent insurance act when there is a question of fact regarding whether he made misstatements knowingly and with an intent to deceive or defraud. For the reasons stated in this opinion, we reverse.

## I. BACKGROUND

This case arises out of a January 4, 2019 motor vehicle accident involving a car in which plaintiff was the front seat passenger. As a result of the collision, plaintiff claimed to have suffered a closed head injury, memory issues, headaches, and various injuries to his leg, shoulder, back, and neck. The owner and driver of the vehicle that plaintiff was riding in did not have automobile

insurance on the date of the accident, and plaintiff lived alone and did not own any vehicles at the time of the accident.

Plaintiff applied for first-party no-fault personal protection insurance (PIP) benefits with the Michigan Automobile Insurance Placement Facility (MAIPF). The application was prepared with the assistance of counsel and was signed by plaintiff. In the application form, question 34 begins: "Were you employed at the time of the accident?" This question is followed by three boxes, which provide the answer options, "yes," "no," and "unknown." In plaintiff's application, the "yes" box is not checked, the "no" box is marked with a handwritten check, and the unknown box is marked with a typed "x." The checkboxes are followed by the instruction: "If yes, provide the following information; if no, skip to question 42." Plaintiff filled in the information requested in the remainder of question 34, identifying K&G Construction as his employer, and indicating he was a roofer for that company from September 2014, to January 2019, earning $700 per week. In questions 36 and 37, plaintiff indicated that he missed work beginning January 6, 2019, because of his injuries and that he had not returned to work. The Michigan Assigned Claims Plan appointed Farmers as the PIP provider for plaintiff's claims.

Plaintiff filed suit against Farmers for breach of contract. Plaintiff sought PIP benefits, including medical expenses, wage loss benefits, and replacement services, under the no-fault act, MCL 500.3101 *et seq*.

Regarding his employment, plaintiff testified at deposition that for years before the accident he was self-employed as an event photographer and as a creator of music that he sold online. Plaintiff testified that had to quit these endeavors because of the accident. Plaintiff also testified that he worked for K&L Beauty Supply, in Detroit, up until three weeks before the accident, doing stocking, and that he was paid "under the table." Plaintiff further testified that he had never worked for K&G Construction, although he previously worked in construction. According to plaintiff, he was supposed to continue training and orientation with Flex-N-Gate, on January 6, 2019, with his employment scheduled to begin in February 2019, but that he lost this job when he could not start orientation because of his injuries from the accident.

Starting five months after the accident, plaintiff submitted replacement services forms to Farmers. In one submittal, plaintiff's service provider, his father, Kevin Brooks, billed for services from January 4, 2019, through January 31, 2019. In another form, Brooks billed for Days 1 through 31 of either "Jan 2019" or "Jun 2019."[1] Plaintiff believed Brooks started helping him with household chores three or four days after the accident, but he did not review the replacement service forms before they were submitted to Farmers.

Farmers moved for summary disposition under MCR 2.116(C)(10), asserting that plaintiff's claims should be dismissed because he committed fraudulent insurance acts and was therefore ineligible for PIP benefits under MCL 500.3173a(4). Farmers argued that plaintiff knowingly misrepresented that he was employed by K&G Construction in his application for PIP benefits. Farmers also argued that the replacement services form requesting payment for three

---

[1] The handwritten nature of this form makes the month unclear.

days before the accident constituted a material misrepresentation. Lastly, Farmers maintained that plaintiff made additional false statements during his deposition relating to K&L Beauty Supply and Flex-N-Gate.[2]

In response to Farmers's motion for summary disposition, plaintiff argued that there was a question of fact whether he knowingly made misrepresentations with an intent to defraud, and, thus, credibility was at issue. Plaintiff acknowledged that he had a "confusing employment history," but contended any inaccuracy in his recitation of his employment history was the result of his memory problems following the accident. During his deposition, plaintiff repeatedly stated that he was having a hard time remembering and testified that he did not have memory problems prior to the accident.

The trial court granted Farmers's motion for summary disposition. The trial court found plaintiff knowingly made material misrepresentations about his employment history, thereby committing a fraudulent insurance act and rendering him ineligible for PIP benefits. The trial court noted that plaintiff had not provided evidence supporting his position that the misrepresentations were attributable to his memory problems caused by his closed head injury.

Plaintiff moved for reconsideration, providing medical records demonstrating cognitive difficulties following the January 4, 2019 motor vehicle accident.[3] The emergency room records showed plaintiff suffered a closed head injury from the accident. At a neuropsychological examination conducted in July 2019, plaintiff reported that the front of his head was struck during the accident and that he was briefly rendered unconscious. Plaintiff further reported that, since the accident, he has suffered cognitive symptoms, such as memory problems, forgetfulness of intent, and difficulty with word finding. Among other neuropsychological tests, Dr. Richard Weiss administered the Wechsler Memory Scale to plaintiff. This test resulted in "four index score values [falling] significantly below what would be predicted based on [plaintiff's] current level of intellectual functioning." The report notes that plaintiff's working memory is in the 4th percentile, and the multiple measurements of other aspects of memory, i.e., auditory memory, visual memory, immediate memory, logical memory, and delayed memory, were all in or under the 5th percentile. It was noted plaintiff's memory scores "fell significantly below what would be predicted based on his current level of intellectual functioning." His executive function was shown to be in the 2nd

---

[2] Farmers produced an affidavit from K&L Beauty Supply's current owner attesting there was no documentation indicating plaintiff ever worked there. Farmers also obtained records from Focus: Hope, a job training organization, confirming that plaintiff started the intake process for the Flex-N-Gate training, but, both times he took the basic knowledge test, he did not perform at the required level for enrollment in the training.

[3] The records were provided to the trial court in plaintiff's motion for reconsideration. The trial court's opinion regarding the motion for reconsideration does not decline to consider the newly cited evidence and specifically refers to some of it, though it does not reference the neuropsychological report. Given that the trial court exercised its discretion to accept the exhibits filed with the reconsideration motion, we will also consider them. See *Yoost v Caspari*, 295 Mich App 209, 220; 813 NW2d 783 (2012).

percentile. In his report, Dr. Weiss reached the following conclusion regarding plaintiff's cognitive status:

> Mr. Gary is presenting a constellation of cognitive deficits consistent with the presence of traumatic brain injury. Features include executive function deficits, memory deficits, and a degradation of certain aspects of intellectual functioning. Based on available information, these deficits are a consequence of the 2019 accident.

The trial court denied the motion for reconsideration and dismissed the claims against defendant Meiasia Norton in the final order. This appeal followed.

## II. ANALYSIS

Plaintiff first argues that the trial court erred by applying MCL 500.3173a to statements made for the first time during discovery. We agree.[4]

MCL 500.3173a(4) states:

> A person who presents or causes to be presented an oral or written statement, including computer-generated information, as part of or in support of a claim to the [MAIPF], or to an insurer to which the claim is assigned under the assigned claims plan, for payment or another benefit knowing that the statement contains false information concerning a fact or thing material to the claim commits a fraudulent insurance act under [MCL 500.4503] that is subject to the penalties imposed under [MCL 500.4511]. A claim that contains or is supported by a fraudulent insurance act as described in this subsection is ineligible for payment of [PIP] benefits under the assigned claims plan. [MCL 500.3173a(4).]

This Court has held an individual commits a "fraudulent insurance act," under MCL 500.3173a, when:

> (1) the person presents or causes to be presented an oral or written statement, (2) the statement is part of or in support of a claim for no-fault benefits, and (3) the claim for benefits was submitted to the MAIPF. Further, (4) the person must have known that the statement contained false information, and (5) the statement

---

[4] A trial court's decision on a motion for summary disposition is reviewed de novo. *Ormsby v Capital Welding, Inc*, 471 Mich 45, 52; 684 NW2d 320 (2004). When reviewing a motion under MCR 2.116(C)(10), the court considers the affidavits, depositions, pleadings, admissions, and other evidence submitted by the parties in the light most favorable to the nonmoving party. *Rose v Nat'l Auction Group, Inc*, 466 Mich 453, 461; 646 NW2d 455 (2002). Summary disposition is appropriate if there is no genuine issue regarding any material fact and the moving party is entitled to judgment as a matter of law. *Id*. "A genuine issue of material fact exists when the record, giving the benefit of reasonable doubt to the opposing party, leaves open an issue upon which reasonable minds might differ." *West v Gen Motors Corp*, 469 Mich 177, 183; 665 NW2d 468 (2003).

concerned a fact or thing material to the claim. [*Candler v Farm Bureau Mut Ins Co of Mich*, 321 Mich App 772, 779-780; 910 NW2d 666 (2017) (footnote and citation omitted).]

In *Williamson v AAA of Mich*, ___ Mich App ___, ___; ___ NW2d ___ (2022) (Docket No. 357070); slip op at 20, this Court held that:

[T]he second element of a "fraudulent insurance act" under MCL 500.3173a(4) as discussed in *Candler*—whether the statement supports a "claim" for no-fault benefits—refers to statements offered to the MAIPF or an assigned insurer during the prelitigation claims process. Statements made for the first time during discovery do not form the basis of a fraudulent insurance act under MCL 500.3173a(4).[5]

Of plaintiff's alleged false statements, only two groups of statements were "statements offered during the prelitigation insurance claims process[:]" (1) statements made to MAIPF in plaintiff's application for PIP benefits, identifying K&G Construction as plaintiff's employer; and (2) statements made to Farmers in replacement services forms, claiming replacement services starting on either the date of the accident or three days before it. All other statements at issue, including interrogatory answers and deposition statements regarding plaintiff's employment with K&L Beauty Supply, and prospective employment with Flex-N-Gate, were made for the first time during discovery. Under *Williamson*, these statements are not "fraudulent insurance acts," and do not create ineligibility for PIP benefits under MCL 500.3173a. Therefore, the trial court erred by considering these statements in its ineligibility determination under the statute.[6]

Next, with respect to his application for PIP benefits, plaintiff maintains that there is a question of material fact whether he knowingly made a misrepresentation regarding his employment. As a preliminary matter, plaintiff contends that any misrepresentation must be made with an intent to defraud in order to constitute a fraudulent insurance act for purposes of MCL 500.3173a(4). As noted, MCL 500.3173a(4) provides that a person commits a fraudulent insurance act under MCL 500.4503 when he or she presents a statement in support of a claim to the MAIPF knowing the statement contains false information material to the claim. MCL 500.4503, in turn, provides that "[a] fraudulent insurance act includes, but is not limited to, acts or

---

[5] The Supreme Court granted oral argument on the application for leave to appeal in *Williamson* to address whether MCL 500.3173a(4) "applies to misrepresentations offered during discovery." *Williamson v AAA of Mich*, ___ Mich ___; 990 NW2d 368 (2023) (Docket No. 165131).

[6] Even if post-litigation statements were grounds to rescind, granting summary disposition would have been improper as the truth of those statements was in dispute. Plaintiff testified that his work at K&L was "under the table" and so the affidavit from the shop's owner is not conclusive as to whether he worked there. There remains a question of fact regarding the truthfulness of plaintiff's statements regarding K&L. The same is true as to Flex-N-Gate; before concluding, in a motion for summary disposition, that plaintiff intentionally made a material false statement, there must be a determination whether or not the statement was false and plaintiff's testimony creates a question of fact as to whether the statement was false.

omissions committed by any person who knowingly, and with an intent to injure, defraud, or deceive" engages in certain defined conduct.

The parties present arguments disputing whether MCL 500.3173a(4) incorporates the requirement of an "intent to injure, defraud, or deceive" found in MCL 500.4503. In *Bakeman v Citizens Ins Co of the Midwest*, ___ Mich App ___; ___ NW2d ___ (2022) (Docket No. 357195), this Court held that an applicant's subjective intent to defraud is not a requirement because "the only scienter requirement is mere knowledge 'that the statement contains false information concerning a fact or thing material to the claim.' " *Id.* at ___; slip op at 4. It is fair to argue that this terminology is broader than the language in MCL 500.4503 addressing intent to defraud, and MCL 500.4503 and MCL 500.3173a are *in pari materia* given the specific reference to the former in the latter. See *Crawford Co v Secretary of State*, 160 Mich App 88, 95; 408 NW2d 112 (1987). However, regardless of the precise nature of the distinction between an intent to defraud and a knowing provision of false, material information, we will, consistent with *Bakeman,* consider the substance of plaintiff's argument regarding his knowledge of the false statements.

Plaintiff first relies on the conflicting answers in his application to MAIPF. As noted, question 34 of the application asks, "Were you employed at the time of the accident?" In plaintiff's application, the "yes" box is not checked, the "no" box is marked with a handwritten check, and the unknown box is marked with a typed "x." The checkboxes are followed by the following instruction: "a. If yes, provide the following information; if no, skip to question 42." According to the application's prompt, no further information regarding employment should have been offered, because plaintiff undisputedly did not answer "yes" when asked if he was employed. Yet plaintiff proceeded to fill out his employment information, listing K&G Construction has his employer until January 2019. Plaintiff's apparent confusion in completing the application supports his contention that any misrepresentation was not knowingly made.

Plaintiff further argues that his testimony regarding his memory problems and the medical records regarding his closed head injury create a question of material fact regarding whether he committed a fraudulent insurance act. As noted above, plaintiff has been diagnosed with a closed head injury with very substantial memory and executive function deficits documented by neuropsychological testing. The memory testing showed him in the 5th percentile, or below, and indicated he had difficulty understanding the test instructions. In addition, plaintiff underwent testing for complaints of lightheadedness, nausea and balance problems that arose following the accident, which revealed an "abnormality with tracking and saccade [rapid eye movements] testing . . . related to central vestibular abnormality."

Accordingly, plaintiff has presented evidence supporting his position that the accident significantly affected his cognitive functioning, including memory. The report detailing plaintiff's cognitive deficits supports the conclusion that plaintiff had difficulty recalling his employment history and also understanding the application, which explains why he would represent that he was not employed at the time of the accident and then immediately proceed to provide what appears to be contradictory employment information.

Farmers argues plaintiff is precluded, by *Candler*, 321 Mich App at 781, from creating a question of fact on the basis of a head injury. In *Candler*, we held "[n]o reasonable jury could conclude plaintiff, despite the presence of any head injury, was not aware that he was submitting

false information that was material to his claim for no-fault benefits." *Id*. at 781-782. However, unlike this case, there was no evidence in *Candler* that the plaintiff had suffered cognitive deficits as a result of the accident. *Candler* is therefore materially distinguishable in this respect.

In ruling on a motion under MCR 2.116(C)(10), courts must weigh the evidence in a light most favorable to the nonmoving party and the "court may not weigh evidence, make determinations of credibility, or otherwise decide questions of fact." *Sabbagh v Hamilton Psychological Servs, PLC*, 329 Mich App 324, 346; 941 NW2d 685 (2019). Given the medical evidence in this case, plaintiff's testimony regarding his memory difficulties, and his apparent confusion in completing the application for PIP benefits, we conclude that reasonable minds could differ on whether plaintiff knew he was submitting false information, which essentially presents a credibility determination. See *Allard v State Farm Ins Co*, 271 Mich App 394, 408; 722 NW2d 268 (2006) ("It is the sole province of the jury to determine the weight of the evidence and credibility of the witnesses."). It was therefore erroneous for the trial court to decide on summary disposition that plaintiff was ineligible for PIP benefits on the basis of his employment history misrepresentations.

Farmers argues that summary disposition was nonetheless warranted on the basis of the January replacement service forms. Notably, the trial court seems to have found the misrepresentations in the replacement services forms did not satisfy either one or more of the *Candler* elements, finding the discrepancies regarding the replacement services could be "natural" and would "not necessarily [be] fatal to a claim." However, the trial court did not unequivocally state the replacement services form misrepresentations could not be an independent basis for PIP ineligibility.

In any event, we conclude that a question of fact exists whether plaintiff knowingly made any misrepresentations on the replacement services forms, and whether any false statement concerned facts material to the claim. One form, for January 2019, claimed services beginning on the day of the accident, while another may have claimed services began three days before the accident, though the handwriting on this form made it unclear which month was referenced.[7] Significantly, however, Brooks completed the forms and plaintiff testified that he did not review them before submittal. This case is thus distinguishable from *Candler*, where the plaintiff had forged his brother's signature to the replacement services calendars, and the brother did not in fact perform those services during the three-month period at issue. See *Candler*, 321 Mich App at 781. Accordingly, Farmers is not entitled to summary disposition on the basis of the replacement service forms.

Reversed and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.

/s/ Noah P. Hood
/s/ Christopher P. Yates

---

[7] In a June 17, 2019 submittal, Brooks billed for services from January 4, 2019, through January 31, 2019. In a form submitted on July 2, 2019, Brooks billed for Days 1 through 31 of the month of either "Jan 2019" or "Jun 2019."