**Michigan Supreme Court**
**Lansing, Michigan**

# Opinion

Chief Justice:
Clifford W. Taylor

Justices:
Michael F. Cavanagh
Elizabeth A. Weaver
Marilyn Kelly
Maura D. Corrigan
Robert P. Young, Jr.
Stephen J. Markman

**FILED JULY 12, 2005**

LOUIS GHAFFARI,

    Plaintiff-Appellant,

v                       No. 124786

TURNER CONSTRUCTION COMPANY,

    Defendant, Cross-Plaintiff,
    Third Party Plaintiff-Appellee,

and

HOYT, BRUM & LINK, and GUIDELINE
MECHANICAL, INC.,

    Defendants,
    Cross-Defendants-Appellees,

and

R.W. MEAD & SONS, INC., and CONTI
ELECTRIC, INC.,

    Third-Party Defendants,

and

ACOUSTICAL CEILING AND PARTITION
COMPANY,

    Defendant,

and

THE EDISON INSTITUTE a/k/a HENRY FORD
MUSEUM & GREENFIELD VILLAGE,

Defendant, Third-Party Plaintiff.
_____/

LOUIS GHAFFARI,

    Plaintiff-Appellant.

v                                                    No. 124787

TURNER CONSTRUCTION COMPANY,

    Defendant, Cross-Plaintiff,
    Third-Party Plaintiff-Appellee,

and

HOYT, BRUM & LINK,

    Defendant,
    Cross-Defendant-Appellee,

and

GUIDELINE MECHANICAL, INC.,

    Defendant, Cross-Defendant,

and

ACOUSTICAL CEILING & PARTITION
COMPANY,

    Defendant,

and

THE EDISON INSTITUTE a/k/a HENRY FORD
MUSEUM & GREENFIELD VILLAGE,

    Defendant, Third-Party Plaintiff,

and

CONTI ELECTRIC, INC.,

    Third-Party Defendant.
_____/

BEFORE THE ENTIRE BENCH

MARKMAN, J.

The question presented is whether the "open and obvious" doctrine has any application in a claim brought under the "common work area" doctrine. We conclude that it does not.

## I.   FACTS AND PROCEDURAL HISTORY

This case arises out of a slip and fall incident that occurred during construction of an IMAX theater at Henry Ford Museum in Dearborn. The premises were owned by the Edison Institute, better known as the Henry Ford Museum and Greenfield Village (Edison). Edison signed a construction contract with defendant Turner Construction Company (Turner), whereby Turner agreed to act as the construction manager for the project. Pursuant to this contract, Turner then negotiated trade contractor agreements with subcontractors on behalf of Edison, and administered them as the construction manager.

Plaintiff, an employee of electrical subcontractor Conti Electric, Inc., was injured on the construction site when he tripped on pipes left on the floor of a storage area that he alleged had served as a passageway. Plaintiff further alleged that the pipes were owned by one of two other subcontractors: either defendant Guideline Mechanical, Inc. (Guideline), the pipefitting

3

subcontractor, or defendant Hoyt, Brum & Link (Hoyt), the plumbing subcontractor.

Plaintiff testified that he had rounded a corner and walked through an archway that, until recently, had been covered with plywood. Plaintiff claimed that he slipped on the pipes as he entered the storage area from behind gangboxes that stood in the walkway. He testified that other pipes closer to eye level distracted his vision as he rounded the gangboxes.

The trial court granted defendants' motion for summary disposition on the ground that the hazard was open and obvious, citing this Court's then-recent decision in *Lugo v Ameritech Corp, Inc*, 464 Mich 512; 629 NW2d 384 (2001). The trial court also granted summary disposition to Guideline on the additional ground that no evidence was presented to indicate that the pipes in question belonged to Guideline. The Court of Appeals affirmed in an unpublished per curiam opinion, which was later published at defendants' request. *Ghaffari v Turner Constr Co*, 259 Mich App 608; 676 NW2d 259 (2003).

We granted leave to appeal and directed the parties to address whether the open and obvious doctrine has any application in a claim under the common work area doctrine described in *Ormsby v Capital Welding, Inc*, 471 Mich 45, 54; 684 NW2d 320 (2004), and, if so, how the open and

4

obvious doctrine could be reconciled with *Hardy v Monsanto Enviro-Chem Systems, Inc*, 414 Mich 29; 323 NW2d 270 (1992), in which this Court concluded that the goal of safety in the workplace would be enhanced by the application of principles of comparative negligence. See *Ghaffari v Turner Constr Co*, 471 Mich 915 (2004).

## II.  STANDARD OF REVIEW

This case requires that we consider whether the open and obvious doctrine is applicable in the construction setting. The applicability of a legal doctrine is a question of law that we review de novo. *People v Thousand*, 465 Mich 149, 156; 631 NW2d 694 (2001). We also review de novo a circuit court's grant of summary disposition. *Maiden v Rozwood*, 461 Mich 109, 118; 597 NW2d 817 (1999).

## III. ANALYSIS

The question presented is whether a general contractor,[1] when confronted with potential liability for a job site injury suffered by the employee of a subcontractor, may avoid liability on the basis that the condition giving rise to the injury was open and obvious.

---

[1] Although, under the terms of its contract with the premises owner, Turner was in fact a "construction manager," and not a "general contractor," the distinction is one without a difference for purposes of our analysis in this case. Because our common work area jurisprudence has heretofore referred to "general contractors," we will continue to use that term.

5

In order to answer this question, we must first examine two relevant common-law doctrines: the common work area doctrine and the open and obvious doctrine.

### A. The Common Work Area Doctrine

At common law, property owners and general contractors generally could not be held liable for the negligence of independent subcontractors and their employees. However, in *Funk v Gen Motors Corp*, 392 Mich 91, 104; 220 NW2d 641 (1974), this Court departed from this traditional framework and set forth an exception to the general rule of nonliability in cases involving construction projects:

> We regard it to be part of the business of a general contractor to assure that reasonable steps within its supervisory and coordinating authority are taken to guard against *readily observable, avoidable dangers* in common work areas which create a high degree of risk to a significant number of workmen. [Emphasis added.]

We also articulated several practical considerations that supported this exception:

> Placing ultimate responsibility on the general contractor for job safety in common work areas will, from a practical, economic standpoint, render it more likely that the various subcontractors being supervised by the general contractor will implement or that the general contractor will himself implement the necessary precautions and provide the necessary safety equipment in those areas.
>
> [A]s a practical matter in many cases only the general contractor is in a position to coordinate work or provide expensive safety features that protect employees of many or all of the subcontractors. . . . [I]t must be

6

recognized that even if subcontractors and supervisory employees are aware of safety violations they often are unable to rectify the situation themselves and are in too poor an economic position to compel their superiors to do so. [*Id.* (internal citation and quotation marks omitted).]

In *Ormsby, supra* at 54, we listed the elements of what had become known since *Funk* as the common work area doctrine:

That is, for a general contractor to be held liable under the "common work area doctrine," a plaintiff must show that (1) the defendant, either the property owner or general contractor, failed to take reasonable steps within its supervisory and coordinating authority (2) *to guard against readily observable and avoidable dangers* (3) that created a high degree of risk to a significant number of workmen (4) in a common work area. [Emphasis added.]

We made clear in *Ormsby* that only when this test is satisfied may a general contractor be held liable for the alleged negligence of the employees of independent subcontractors with respect to job site safety. *Id.* at 55-56. The failure to satisfy any one of these elements is fatal to a *Funk* claim. *Id.* at 59.

B. The Open and Obvious Doctrine

In general, a premises possessor must exercise reasonable care to protect invitees from an unreasonable risk of harm caused by a dangerous condition on the land. *Bertrand v Alan Ford, Inc*, 449 Mich 606, 609; 537 NW2d 185 (1995). However, this duty does not generally require the

7

removal of open and obvious dangers.  In *Lugo, supra* at 516-517, we rearticulated the open and obvious doctrine:

> [W]here the dangers are known to the invitee or are so obvious that the invitee might reasonably be expected to discover them, an invitor owes no duty to protect or warn the invitee unless he should anticipate the harm despite knowledge of it on behalf of the invitee.
>
> * * *
>
> In sum, the general rule is that a *premises possessor is not required to protect an invitee from open and obvious dangers*, but, if special aspects of a condition make even an open and obvious risk unreasonably dangerous, the premises possessor has a duty to undertake reasonable precautions to protect invitees from that risk. [Internal citations omitted; emphasis added.]

We also stated that the open and obvious doctrine should not be viewed as "some type of 'exception' to the duty generally owed invitees," but rather viewed "as an integral part of the definition of that duty." *Id.* at 516.

### C.  Compatibility of the Two Doctrines

Defendants urge us to find that the two doctrines—the common work area doctrine and the open and obvious doctrine—are compatible and can be applied harmoniously. However, as noted above, for a general contractor to be held liable under the common work area doctrine, a plaintiff must show that the general contractor has failed "to guard against readily observable and avoidable dangers . . . ." *Ormsby*, *supra* at 54.  Yet, one could replace the phrase "readily observable and avoidable" as used in *Ormsby*

8

with the phrase "open and obvious" without significantly changing the meaning of this passage. Thus, an irreconcilable conflict immediately arises: one doctrine (common work area) imposes an affirmative duty to protect against hazards that are open and obvious, while the other (open and obvious) asserts that *no* duty exists if the hazards are open and obvious.[2] Because of this logical conflict, we have no difficulty in concluding that the open and obvious doctrine and the common work area doctrine are incompatible.

The Court of Appeals recognized in this case that Michigan courts have not expanded the open and obvious doctrine into a general-contractor liability context. *Ghaffari, supra* at 614. However, the Court then proceeded to conclude that "there is nothing in the history of the open and obvious danger doctrine . . . to suggest that the doctrine should not apply in other contexts." *Id*. With this conclusion, we respectfully disagree.

In addition to the logical conflict noted above, we recognize that there are several critical distinctions between the two doctrines that demonstrate that they serve different objectives. First, our jurisprudence makes clear

---

[2] At least, absent "special aspects." *Lugo, supra* at 517-518.

9

that the two doctrines are applicable in entirely different contexts. The open and obvious doctrine is specifically applicable to a premises possessor. *Lugo, supra* at 516-517. The common work area doctrine, meanwhile, is not applicable to the premises possessor, but rather to a general contractor whose responsibility it is to coordinate the activities of an array of subcontractors. See, generally, *Funk* and *Ormsby*.

In *Perkoviq v Delcor Homes—Lake Shore Pointe, Ltd*, 466 Mich 11; 643 NW2d 212 (2002), this Court recognized the distinction inherent in these two contexts. In *Perkoviq*, the plaintiff worker was injured when he fell from the roof while painting a partially constructed house. He brought suit against the defendant, the owner and general contractor of the subdivision development, on both premises liability and contractor liability theories. In reversing the Court of Appeals conclusion that genuine issues of material fact existed regarding the plaintiff's premises liability claim, we observed:

> The Court of Appeals seems to have confused general contractor liability with the liability of a possessor of premises. In explaining its conclusion that defendant could be liable on a premises liability theory, the Court used analysis that was irrelevant to that theory and would be applicable only to a claim against a general contractor. . . .

> The fact that defendant may have additional duties in its role as general contractor,

however, does not alter the nature of the duties owed by virtue of its ownership of the premises. [*Id.* at 19.]

Thus, contrary to the Court of Appeals analysis, *Perkoviq* makes clear that different duties are owed under each doctrine, and that the legal analyses employed in the two contexts are distinct.

Moreover, *Ormsby* itself implicitly recognized the fundamental difference between these two contexts. While a premises owner who hires an independent contractor is generally not liable for injuries that the contractor negligently causes,[3] we noted in *Ormsby* that a premises owner may still be liable for injuries to workers under limited circumstances. Where the premises owner retains sufficient control over the construction project, the owner "steps into the shoes of the general contractor and is held to the same degree of care as the general contractor." *Ormsby*, *supra* at 49. In such a case, the owner would face liability under the "retained control doctrine," which we described as standing for the proposition

that when the *Funk* "common work area doctrine" would apply, and the property owner has sufficiently "retained control" over the construction project, that owner steps into the shoes of the general contractor and is held to the same degree of care as the general

---

[3] See, e.g., *DeShambo v Anderson*, 471 Mich 27, 31; 684 NW2d 332 (2004).

11

contractor. Thus, the "retained control doctrine," in this context, means that if a property owner assumes the role of a general contractor, such owner *assumes the unique duties and obligations of a general contractor*. [*Id*. (emphasis added).]

*Ormsby* made clear that the owner's liability in such a situation would stem not from the owner's status as the premises *possessor*, but from his or her status as the de facto *general contractor*. In making such a distinction, *Ormsby* recognized the distinction between the duties a premises possessor owes by virtue of his or her status as a possessor, and the duties owed by virtue of retaining control as a contractor over a common work area. Because these duties—articulated in the open and obvious doctrine and the common work area doctrine, respectively—are distinct, so too must be the doctrines that articulate such duties.[4]

A second distinction between the two doctrines that our cases make apparent concerns the issue of worker

---

[4] We note that the retained control doctrine is not implicated in the instant case, because none of the remaining defendants is the premises owner. We refer to that doctrine only to point out its recognition that the nature of the liability faced by one who possess premises, and by one who controls premises during their construction, are distinct.

safety.[5]   We note that the application of the open and obvious doctrine in the construction setting would conflict with the reasoning underlying this Court's holding in *Hardy,* because it would largely nullify the doctrine of comparative negligence in the construction setting, and effectively restore the complete bar to a contractor's liability abolished when *Hardy* eliminated contributory negligence in that setting.

In *Hardy*, *supra* at 39, this Court addressed "whether the *Funk* policy of promoting safety in the workplace would be undermined or enhanced by the application of the principles of comparative negligence." In adopting comparative negligence, we observed:

> In *Funk*, this Court found the total bar of contributory negligence to be inconsistent with the public policy of promoting safety in the workplace. The Court refused to allow a general contractor and a landowner to "avoid" liability "by pointing to the concurrent negligence of the injured worker in using the [unsafe] equipment." Before *Funk*, the contractor could entirely avoid

---

[5] While the foundational consideration underlying the common work area doctrine is one of job site safety, safety concerns of course are not limited to the construction setting. While our opinion today distinguishes the common work area doctrine from the open and obvious doctrine, we emphasize our view that the latter doctrine also promotes safety concerns, albeit in a different manner. As is apparent from our discussion later in this opinion of the hazards typically found in a construction site, what constitutes "ordinary care" in a premises liability setting may differ substantially from what constitutes "ordinary care" in the construction setting.

13

liability by convincing the finder of fact that the plaintiff was even 1% negligent. Apparently it was feared that some contractors might succumb to the temptation of employing skilled defense counsel instead of adequate safety devices. . . .

"To allow defendants in this case to invoke the protection of the contributory negligence doctrine would be tantamount to subverting the very safety concerns that the . . . *Funk* court[] extolled as of paramount importance. Such a position might allow a manufacturer to escape its duty of due care . . . ."

* * *

In stark contrast, the defense of comparative negligence never allows a contractor to entirely "avoid" liability and thus "escape" the duty of due care. Under *Placek* [*v Sterling Hts*, 405 Mich 638; 275 NW2d 511 (1979)], the defendant must pay the full percentage of damages caused by his negligence. [*Id.* at 39-40 (citations omitted).]

The adoption of the open and obvious doctrine in the general contractor setting would tend to thwart the goals of workplace safety advanced by our decisions in *Funk* and *Hardy*. If we were to adopt the rule set forth below by the Court of Appeals, we would effectively return to a contributory negligence regime. In such a case, no matter how negligent the general contractor was in creating or failing to ameliorate the hazard, the employee would be barred from recovery because the hazard was open and obvious.

*Hardy* recognized that such bars to recovery "provide a strong financial incentive for contractors to breach the

14

duty to undertake reasonable safety precautions." *Id.* at 41. Indeed, such a rule might lead to a paradoxical result—the more egregious (i.e., obvious) the safety violation, the less incentive the contractor would have to ameliorate the hazard, because of the knowledge that obviousness of the hazard would bar the contractor's liability for the resulting injury. Instead, *Hardy* adopted a comparative negligence rule on the grounds that such a rule retains a strong incentive for general contractors to maintain workplace safety.[6] Accordingly, we believe that *Hardy* supports the conclusion that the open and obvious doctrine should remain distinct from the common work area doctrine.

As a third distinction between the two doctrines, we offer a final observation grounded in the nature of the different harms confronted in the realms in which each doctrine is applicable. In particular, there exist unique and distinct attributes of the construction setting that would make the rules applicable in the typical premises liability setting inappropriate.

---

[6] In addition, such a rule also ensures that the *worker* also bears responsibility for his or her own conduct. A comparative negligence regime "enhances the goal of safety in the workplace under these conditions . . . ." *Hardy*, *supra* at 41.

Construction sites typically involve the comings and goings of multiple subcontractors and their materials, a physical venue that is constantly being subjected to alteration, with any number of open hazards that are evolving by the moment. The hazards existing at construction sites are numerous and may typically come from any one of three dimensions, including from above. These hazards may often be in motion. Loud and sudden noises may surround and distract the construction worker, with many of these noises emanating from the dangerous activities carried out by fellow workers who may be near. Nonetheless, at the same time that he or she is confronted with such an environment, the construction worker must move at a business-like pace in order to carry out his or her job—one that may require considerable physical exertion, and require attention to detail and compliance with demanding professional standards—in a timely manner. This is in contrast to the typical premises liability case in which the open and obvious hazard is found on or near ground level, and in which distractions, although they may sometimes exist, are of a considerably less urgent and persistent character than those faced by the construction worker. While the construction worker still bears the responsibility of carrying out his or her work in a reasonable and prudent manner, the worker will typically

encounter more dangers of a more diverse character, and more distractions coming from more directions, than will persons shopping in retail establishments or walking in parking lots or visiting the residences of others, and will generally be less able to avoid a given hazard than the typical invitee or licensee, even if the hazard may be seen after the fact as open and obvious.

It is the general contractor who has the coordinating power and supervisory authority to ensure that this unusual array of physical risks does not devolve into chaos, and it is the general contractor upon whom ultimate responsibility for the safe completion of a project rests. As the overall coordinator of this activity, the general contractor is best situated to ensure workplace safety at the least cost. Because of this position, the duty to keep common work areas safe reasonably falls on the general contractor.

As our analysis today attempts to make clear, the two doctrines at issue are independent of and distinct from one another. The open and obvious doctrine serves as an "integral part of the definition" of the duty a premises possessor owes invitees, *Lugo*, *supra* at 516, while the common work area doctrine "is an exception to the general rule of nonliability for the negligent acts of independent subcontractors and their employees," under which "an injured employee of an independent subcontractor [may] sue

17

the general contractor . . . ." *Ormsby*, *supra* at 49. The two doctrines involve completely distinct sets of plaintiffs and defendants, and therefore, as noted in *Perkoviq*, different sets of duties.

Thus, contrary to the Court of Appeals conclusion, this Court's cases have not suggested that the two doctrines are compatible, but rather have made clear that the rationale and practical considerations underlying the open and obvious doctrine are separate and distinct from those that underlie the common work area doctrine. Because we reaffirm that the two doctrines are, in fact, distinct, we hold that the open and obvious doctrine has no applicability to a claim under the common work area doctrine, and therefore the trial court erred in granting summary disposition in favor of defendants on the basis that the pipes at issue were an open and obvious hazard.

### D. Subcontractor Liability

The question remains regarding the liability of the defendant subcontractors, Hoyt and Guideline. Plaintiff argues that summary disposition should not have been granted because a question of fact existed with regard to "whether defendants negligently performed their contractual obligations to clean up and remove safety hazards." Plaintiff and defendant Hoyt disagree regarding the

18

relevance of our decision in *Fultz v Union-Commerce Assoc*, 470 Mich 460; 683 NW2d 587 (2004).

Moreover, with respect to defendant Guideline, besides granting summary disposition because the condition was open and obvious, the trial court granted summary disposition on the additional ground that no evidence was presented to indicate that the pipes in question belonged to Guideline. Plaintiff argues to this Court, as he did to the Court of Appeals, that summary disposition was inappropriate with regard to Guideline, because a genuine issue of material fact was presented concerning whether it owned the pipes that caused plaintiff's fall. However, in light of its conclusion that the open and obvious doctrine barred plaintiff's claim, the Court of Appeals never addressed this alternate ground for summary disposition.

Because our decision in *Fultz* was released nine months after the Court of Appeals decision in this case, and because the Court did not address the matter of Guideline's ownership of the pipes, remand to the Court of Appeals is necessary for resolution of these issues. On remand, the Court shall first consider whether a genuine issue of material fact exists regarding Guideline's ownership of the pipes. If it concludes that no such issue exists, then it shall affirm the trial court's grant of summary disposition for Guideline on that ground. Should the Court conclude

19

that an issue of fact does exist, then the Court shall consider if Guideline, along with Hoyt, owed plaintiff any duty under *Fultz*.

If the Court concludes that Hoyt, Guideline, or both owed plaintiff a duty under *Fultz*, the Court shall then remand to the trial court for further proceedings against the relevant subcontractor(s) and Turner. However, should the Court conclude that the subcontractor(s) owed plaintiff no contractual duty, then it shall dismiss Hoyt and Guideline from the suit and remand for further proceedings against Turner only.[7]

IV. CONCLUSION

The open and obvious doctrine has no applicability to a claim brought under the common work area doctrine. The two doctrines are conceptually distinct, and our case law

---

[7] While we decline to review plaintiff's contract-based claim of liability in advance of the Court of Appeals, we note in passing that the subcontractors face no liability under the other theories addressed in this opinion. No liability could attach under a premises liability theory, because the subcontractors were not the premises possessors. See *Lugo, supra* at 516-517. Nor can the subcontractors face liability under the common work area doctrine, because they did not have control of the work area. We recognized in *Ormsby, supra* at 56-57, that the common work area doctrine is only applicable to a general contractor or to a property owner who retains sufficient control of the work so as to act in a superintending capacity (under the "retained control" doctrine). Here, the subcontractors acted as neither. Thus, neither of these doctrines serves as a basis for imposing liability on Hoyt or Guideline.

20

has treated them as such. Accordingly, the decision of the Court of Appeals is reversed.

However, because the Court of Appeals declined, on the basis of its findings regarding the applicability of the open and obvious doctrine, to review the alternate ground for summary disposition given with respect to defendant Guideline, and because our decision in *Fultz* was released after the Court of Appeals decision in the instant case, we remand to that Court to determine the outstanding questions concerning the liability of the subcontractors. Once it has resolved these questions, the Court of Appeals is instructed to further remand to the trial court for further proceedings consistent with this opinion with regard to Turner and, if applicable, Hoyt and Guideline.

Stephen J. Markman
Clifford W. Taylor
Michael F. Cavanagh
Elizabeth A. Weaver
Marilyn Kelly
Maura D. Corrigan
Robert P. Young, Jr.