**Michigan Supreme Court**
**Lansing, Michigan**

# Opinion

Chief Justice:
Clifford W. Taylor

Justices:
Michael F. Cavanagh
Elizabeth A. Weaver
Marilyn Kelly
Maura D. Corrigan
Robert P. Young, Jr.
Stephen J. Markman

FILED APRIL 14, 2008

DOUGLAS LATHAM,

      Plaintiff-Appellee,

v

    No. 132946

BARTON MALOW COMPANY,

      Defendant-Appellant.

BEFORE THE ENTIRE BENCH

TAYLOR, C. J.

    In this case, we analyze what comprises the element of "readily observable and avoidable dangers" in a lawsuit involving a "common work area" of a construction site. In *Funk v Gen Motors Corp*,[1] this Court established the common-work-area doctrine, which by its elements is not a strict liability tort but is instead one that imposes liability only if the general contractor itself fails to

---

[1] *Funk v Gen Motors Corp*, 392 Mich 91; 220 NW2d 641 (1974), overruled in part on other grounds *Hardy v Monsanto Enviro-Chem Sys, Inc*, 414 Mich 29 (1982).

prevent negligence.[2] Thus, the danger cannot be just the unavoidable, perilous nature of the site itself. Rather, the danger for which a duty attaches is an avoidable danger to which a significant number of workers are exposed, such as— in *Funk* and this case—failure to have fall-protection devices to protect workers from falling from a height on the project. The lower courts erred in ascertaining the relevant danger, basing their analyses on the conclusion that an elevated mezzanine, which at the time of the injury was necessarily without perimeter protection, itself created a high degree of risk to a significant number of workers. Instead, the proper danger to focus on was *working at dangerous heights without any protection from falls*, and the proper analysis concerned whether a significant number of workers were exposed to this avoidable risk.

Because both lower courts misapprehended the appropriate danger to examine and decided the case on that erroneous basis, they also erred on the issue whether a significant number of workers would be exposed to the relevant peril. With the appropriate danger clarified, we reverse the judgment of the Court of Appeals and remand this case to the trial court for further proceedings consistent with this opinion.

I

Plaintiff was a carpenter employed by B & H Construction to work on the construction of a new school building. Defendant Barton Malow Company was

---

[2] *Funk, supra* at 108.

the construction manager on the project.[3] On the day of plaintiff's injury, plaintiff and a coworker were moving sheets of drywall from a scissors lift to the mezzanine level of the project. They raised the lift to the height of the mezzanine and removed the cable barrier around the perimeter of the mezzanine, an action required to allow ingress. When they began carrying the first sheet of drywall from the lift to the mezzanine, plaintiff was not wearing a fall-protection harness, contrary to jobsite rules of which he was aware. As plaintiff was moving onto the mezzanine, the sheet of drywall cracked and plaintiff lost his balance, falling 13 to 17 feet to the floor. He was injured, but undisputedly would not have been had he been wearing the required protective harness.

Plaintiff sued defendant for negligent performance of a contract[4] and negligence under the common-work-area doctrine, under which a general contractor may be held liable for injuries caused by dangers in common work areas. The elements of such a claim are: (1) the defendant contractor failed to take reasonable steps within its supervisory and coordinating authority (2) to guard against readily observable and avoidable dangers (3) that created a high degree of risk to a significant number of workers (4) in a common work area.[5] Plaintiff

---

[3] For purposes of its summary disposition motion, defendant conceded that it served as general contractor for the project. Accordingly, the trial court made no decision regarding that issue.

[4] This claim was dismissed by the trial court and is not at issue here.

[5] *Ormsby v Capital Welding, Inc*, 471 Mich 45, 57; 684 NW2d 320 (2004); *Funk, supra* at 104.

asserted that defendant had failed to ensure that plaintiff would use proper fall protection while working on the lift and the mezzanine, despite knowing that such protection was necessary when the perimeter cable was lowered.

Because numerous other workers from other trades would be required to use the lift to access the mezzanine and lower the cable to enter the mezzanine, plaintiff argued that the situation created a high degree of risk to a significant number of workers.

Defendant moved for summary disposition under MCR 2.116(C)(10) (no genuine issue of material fact), arguing that plaintiff had not shown the existence of a high degree of risk to a significant number of workers because the area was not accessible to a significant number of workers at the time of the accident and because plaintiff's individual failure to use fall protection did not create a high degree of risk to a significant number of workers. Defendant also argued that because plaintiff's own employer was contractually responsible for its workers' observing proper safety procedures, plaintiff had not shown that defendant failed to act reasonably.

The trial court denied defendant's motion for summary disposition, concluding that plaintiff had sufficiently created a question of fact regarding the number of workers using the area. The court did not discuss the nature of the danger or whether there existed a high degree of risk. The trial court determined that no dispute existed regarding whether a fall was readily avoidable if personal

fall protection had been used and that defendant's safety supervisor knew this.[6] While acknowledging that defendant had presented a serious challenge to plaintiff's allegation of unreasonable action, the court held that this was properly a question for the jury.

The Court of Appeals affirmed.[7] It agreed with the trial court that "plaintiff faced the danger of working on an elevated platform that did not have any permanent perimeter protection to protect him from falling while loading materials onto the mezzanine."[8] It said that the trial court properly focused on the mezzanine's lack of perimeter protection, not plaintiff's failure to use personal fall protection, even though the Court acknowledged that such protection would have prevented plaintiff's injuries. The Court determined that a significant number of workers from other trades would be exposed to the same hazard of having to use the unprotected mezzanine opening when entering and leaving the lift and disagreed with defendant that the number of workers present at the specific time of the injury was relevant.[9] The Court concluded that defendant had supervisory and controlling authority over the jobsite and that the mezzanine was a common work

_____

[6] Notably, in its discussion of plaintiff's active negligence claim, the trial court observed that "[p]laintiff had tools of the trade available to protect himself and [sic] which should have been provided by his employer, or which he should have been trained to use by his employer."

[7] *Latham v Barton Malow Co*, unpublished opinion per curiam of the Court of Appeals, issued October 17, 2006 (Docket No. 264243).

[8] *Id.* at 3.

[9] *Id.*

5

area.[10]  The Court held that the four elements of the common-work-area doctrine were met because a question of fact existed regarding whether defendant took reasonable steps to guard against the danger.

Defendant applied for leave to appeal, and we ordered oral argument on whether to grant the application or take other action, directing the parties to address (1) whether the proofs presented in the trial court were sufficient to satisfy the standard for general contractor liability set forth in *Ormsby v Capital Welding, Inc*[11] and (2) whether defendant's motion for summary disposition should have been granted.[12]

## II

This Court reviews de novo a trial court's grant or denial of a motion for summary disposition.[13]  We review a motion brought under MCR 2.116(C)(10) by considering the pleadings, admissions, and other evidence submitted by the parties in the light most favorable to the nonmoving party.[14]  Summary disposition is

---

[10] *Id.* at 4.  Because defendant had conceded for purposes of the motion hearing that the mezzanine was a common work area, the trial court made no finding on the issue.

[11] *Ormsby,* n 5 *supra.*

[12] *Latham v Barton Malow Co*, 477 Mich 1118 (2007).

[13] *Ormbsy, supra* at 52.

[14] *Greene v A P Products, Ltd*, 475 Mich 502, 507; 717 NW2d 855 (2006).

appropriate if there is no genuine issue regarding any material fact and the moving party is entitled to judgment as a matter of law.[15]

III

In *Funk*, this Court, exercising its common-law authority, expanded the duties of those ultimately in control of a construction project worksite (most often the general contractor) by creating the common-work-area doctrine.  This doctrine was described as follows:

> We regard it to be part of the business of a general contractor to assure that reasonable steps within its supervisory and coordinating authority are taken to guard against readily observable, avoidable dangers in common work areas which create a high degree of risk to a significant number of workmen.[16]

The doctrine is understood as an exception to the general rule that, in the absence of its own active negligence, a general contractor is not liable for the negligence of a subcontractor or a subcontractor's employee[17] and that the immediate employer of a construction worker is responsible for the worker's job safety.[18]

Essentially, the rationale behind the *Funk* doctrine is that the law should be such as to discourage those in control of the worksite from ignoring or being careless about unsafe working conditions resulting from the negligence of

---

[15] *Id.*

[16] *Id*. at 104.

[17] *Ormsby, supra* at 53.

[18] *Funk, supra* at 102.

7

subcontractors or the subcontractors' employees. This Court explored the history of the doctrine in depth in *Ghaffari v Turner Constr Co*,[19] in which we observed that "'in many cases only the general contractor is in a position to coordinate work or provide expensive safety features that protect employees of many or all of the subcontractors.'"[20] Subcontractors and their employees, even if they are aware of hazards, may be unable to rectify the situation themselves or to compel others to do so.[21] In cases in which normal safety precautions can reduce a hazardous condition so that it no longer creates a high degree of risk to workers, the general contractor's duty is to take reasonable steps to ensure that those safety precautions are taken.[22] In such cases, in order to state a cause of action against a general contractor under the common-work-area doctrine, the plaintiff must show that the general contractor's failure to reasonably ensure that workers were observing safety procedures resulted in a significant number of workers being exposed to a high degree of risk in a common work area.

The fundamental question presented in this case, in which the general contractor was in control of the worksite, is: What was the danger creating a high degree of risk that is the focus of the general contractor's responsibility? *Funk* itself provides assistance in answering this question. There, this Court analyzed a

---

[19] *Ghaffari v Turner Constr Co,* 473 Mich 16; 699 NW2d 687 (2005).

[20] *Id*. at 20, quoting *Funk, supra* at 104.

[21] *Funk, supra* at 104.

[22] *Ormsby, supra* at 54, quoting *Funk, supra* at 106-107.

similar common-work-area fall. In *Funk*, as here, the plaintiff would not have been injured had he worn a fall-protection device or had netting been provided. This Court agreed with the *Funk* plaintiff that the defendants

> exposed him to avoidable injury by allowing subcontractors to order the men to work at dangerous heights without any protection from falls in a job environment in which laborers were expected to complete their assigned tasks without regard to the absence of safety equipment guarding against injury in the event of a mishap.[23]

The Court in *Funk* was clear that the danger at issue was not the height itself, but the fact that the men were required to work "at dangerous heights *without any protection from falls*." To hold that the unavoidable height *itself* was a danger sufficient to give rise to a duty would essentially impose on a general contractor strict liability for any injury resulting from a fall from an elevated common work area. This has never been the law. Moreover, because working at heights is generally an *unavoidable* condition of construction work, it cannot, by itself, be the avoidable danger *Funk* described. Hazards, including dangerous heights, are commonplace in construction worksites. In some situations, a general contractor may be able to remove a particular hazard, but general contractors simply cannot remove all potential hazards from a construction workplace. If a hazard cannot be removed, the general contractor can take reasonable steps to require workers to use safety equipment and procedures, thereby largely reducing or eliminating the risk of harm in many situations.

---

[23] *Funk, supra* at 100.

Accordingly, in this case, as in *Funk*, the danger that created a high degree of risk is correctly characterized as the danger of *working at heights without fall-protection equipment*. It is this danger to which a significant number of workers must be exposed in order for a claim to exist.[24]

IV

With the relevant danger correctly perceived, the error of the lower courts' analyses becomes apparent. While defendant's motion for summary disposition identified the correct danger and further raised the issue that plaintiff's own failure to wear a fall-protection device did not create a high degree of risk to a significant number of workers, the trial court and the Court of Appeals erred by misidentifying the danger and inevitably erred in the subsequent analysis regarding how many other workers were exposed to the risk.[25] We therefore

---

[24] The dissent's formulation of the common-work-area doctrine is hard to understand. As we grasp it, its central failing is that the dissent fails to concede that *Funk* applies only to avoidable dangers. Heights on construction projects, we conclude, as did the *Funk* Court, are not avoidable. Thus, heights are not by themselves hazards addressed by *Funk*. We have never said what fall-protection gear is needed at heights. The question is whether fall protection was available and whether the general contractor took reasonable steps to see that it was used. The dissent appears to assert that the issue is, however, one of strict liability for the general contractor, not an issue of taking reasonable steps. In short, under the dissent's analysis, *Funk* would be not a negligence rule, as it was designed to be, but would instead be a strict-liability rule.

[25] Although we focus here on only one of the common-work-area elements, we note that plaintiff must satisfy all the elements that give rise to a duty owed by a general contractor. *Funk* also requires plaintiff to show that the failure of a significant number of workers to take safety precautions was readily observable and that the failure was avoidable. Finally, the plaintiff must, of course, also show

(continued…)

10

reverse the judgment of the Court of Appeals and remand this case to the trial court for further proceedings consistent with this opinion.

                                        Clifford W. Taylor
                                        Elizabeth A. Weaver
                                        Maura D. Corrigan
                                        Robert P. Young, Jr.
                                        Stephen J. Markman

---

(…continued)
that the defendant failed to take reasonable steps to ensure compliance and that the danger existed in a common work area.

# STATE OF MICHIGAN

## SUPREME COURT

DOUGLAS LATHAM,

      Plaintiff-Appellee,

v                                  No. 132946

BARTON MALOW COMPANY,

      Defendant-Appellant.

_____

KELLY, J. (*dissenting*).

With its opinion in this case, the majority injects further confusion into the area of negligence law. It does so by defining the danger that was present in this case as "working at heights without fall-protection equipment."[1] This definition conflates the questions posed by the first two elements of the common-work-area doctrine: (1) whether the defendant contractor took reasonable steps within its supervisory and coordinating authority and (2) whether the danger was readily observable and avoidable.[2]

---

[1] *Ante* at 10.

[2] In *Ormsby v Capital Welding, Inc*, 471 Mich 45, 54; 684 NW2d 320 (2004), the Court listed the four elements of the common-work-area doctrine: (1) the general contractor failed to take reasonable steps within its supervisory and coordinating authority (2) to guard against readily observable and avoidable dangers (3) that created a high degree of risk to a significant number of workers (4) in a common work area.

The majority quotes with approval defendant's argument that "plaintiff's own failure to wear a fall-protection device did not create a high degree of risk to a significant number of workers . . . ."[3] This presumes, without explanation, that wearing personal fall protection was the only reasonable way to avoid the danger of falling from the mezzanine. The majority makes the injured worker's failure to wear personal protection dispositive under the common-work-area doctrine. It does so even though, under our system of comparative negligence, a worker's negligence is separate from the negligence of the general contractor.[4]

The majority's resolution of this case may cause unexpected undesirable repercussions in future negligence cases. This is because it divides the question whether reasonable measures were taken to protect against a foreseeable risk into (1) whether a risk existed in the first place and (2) whether plaintiff failed to protect himself against it. The Court should avoid distorting the law of negligence in this fashion.

I

As a rule, general contractors are not liable for the negligence of independent subcontractors and their employees.[5] In *Funk v Gen Motors Corp*,[6] the Court set

---

[3] *Ante* at 10.

[4] In *Hardy v Monsanto Enviro-Chem Sys, Inc*, 414 Mich 29, 39; 323 NW2d 270 (1982), the Court held that a general contractor could not avoid liability "'by pointing to the concurrent negligence of the injured worker . . . .'" (Citation omitted.)

[5] *Ormsby,* 471 Mich at 53.

2

forth the common-work-area exception to this rule.  The majority bases its rationale

on a passage from *Funk* in which the Court summarized the *Funk* plaintiff's

argument that the defendants had

> exposed him to avoidable injury by allowing subcontractors to order the men to work at dangerous heights without any protection from falls in a job environment in which laborers were expected to complete their assigned tasks without regard to the absence of safety equipment guarding against injury in the event of a mishap.[7]

Using this passage, the majority concludes:

> The Court in *Funk* was clear that the danger at issue was not the height itself, but the fact that the men were required to work "at dangerous heights without any protection from falls."  To hold that the unavoidable height itself was a danger sufficient to give rise to a duty would essentially impose on a general contractor strict liability for any injury resulting from a fall from an elevated common work area.  This has never been the law.  Moreover, because working at heights is generally an unavoidable condition of work, it cannot, by itself, be the avoidable danger *Funk* described.  Hazards, including dangerous heights, are commonplace in construction worksites.[8]

The majority misreads the passage from *Funk* in several respects.  First, the

Court in *Funk* specifically referred to the heights as "dangerous heights."  To say

that elevations that create a foreseeable injury from falling are not inherently

dangerous defies common sense.   If such elevations were not inherently

dangerous, there would be no duty to protect the people who work there.

_____

(…continued)
     [6] *Funk v Gen Motors Corp*, 392 Mich 91; 220 NW2d 641 (1974), overruled in part on other grounds by *Hardy*.

     [7] *Id.* at 100.

     [8] *Ante* at 9.

3

Second, according to *Funk*, while dangerous heights on construction projects may be unavoidable, injury from a fall is avoidable if reasonable measures are taken to prevent it. *Funk* recognized that reasonable measures can be taken to prevent injuries from falls. That recognition places the common-work-area doctrine in the negligence regime rather than the strict-liability regime.[9]

The passage on which the majority relies faulted the general contractor for *allowing* subcontractors to send their men to elevated locations "without *any* protection from falls" and in "*the absence of safety equipment* guarding against

_____

[9] In her dissent in *Funk*, Justice Coleman reviewed Michigan law on inherently dangerous activities and came to the following conclusion:

> The Michigan cases are uniform in holding that generally an employer is not liable for the torts of an independent contractor. An exception has been developed for activities or tasks which reasonably can be foreseen as dangerous to third parties, with a few cases extending the exception to employees. These activities include those dangerous despite use of all reasonable care and those dangerous unless reasonable care is exercised . . . . It is clear that this doctrine imposes a form of strict liability upon the owner or employer of the independent contractor. However, such liability is not absolute. [*Id*. at 135 (Coleman, J. dissenting).]

Justice Coleman correctly recognized that some dangerous activities cannot be made safe, whereas others can be if reasonable care is exercised. She incorrectly concluded, however, that either type of danger exposes a general contractor to strict liability. The majority in *Funk* held that working on elevations at construction sites can be made safe through reasonable precautions. In recognizing the various reasonable precautions that could be taken, the majority imposed on a general contractor a duty of reasonable care rather than an absolute duty to make safe.

In *Ormsby*, 471 Mich at 56, the Court noted that the common-work-area doctrine had not resulted in the imposition of strict liability on general contractors, despite Justice Coleman's prediction.

4

injury in the event of a mishap."[10]  The passage essentially shows that the general

contractor did not take reasonable steps to protect those who worked at elevations.

The various reasonable steps identified in *Funk* were to make provisions for

"suspending nets, scaffolding, bucket cranes, safety belts or harnesses."[11]  Thus,

*Funk* does not compel the conclusion the majority reaches that personal safety

protection is the only way to guard against the risk of falling from heights.  Nor does

*Funk* redefine the danger posed by working at heights as the danger of confronting

heights without personal fall protection, as the majority does.

The majority expressly redefines danger.  Implicitly, however, it presumes

that the general contractor took reasonable steps to protect workers on the job from

danger when it opines that

> a general contractor may be able to remove a particular hazard, but
> general contractors simply cannot remove all potential hazards from
> a construction workplace.  If a hazard cannot be removed, the
> general contractor can take reasonable steps to *require* workers to
> use safety equipment and procedures, thereby largely reducing or
> eliminating the risk of resulting harm in many situations.[12]

This statement reveals the majority's underlying premise that, unlike the general

contractor in *Funk*, the general contractor here cannot be faulted, given that it

*required* workers to use safety equipment and procedures.  The majority also

implies that the sole cause of plaintiff's fall was plaintiff's own negligence in not

_____

[10] *Funk*, 392 Mich at 100 (emphasis added).

[11] *Id*. at 103.

[12] *Ante* at 9 (emphasis added).

5

wearing protective fall gear.  If the majority believes that the general contractor took reasonable measures to prevent falls from the mezzanine, it should say so. There is no need to redefine the danger in order to reach this result.

II

Plaintiff's evidence shows that, after the iron workers erected the steel and the cement workers poured the floor, workers from the following trades needed access to the mezzanine: carpenters, electricians, plumbers, painters, and a crew to install heating, ventilation, and cooling equipment.  It was estimated that electricians, plumbers, and carpenters would use the mezzanine on numerous days, and that workers from several trades would work there at the same time.  On the day of plaintiff's fall, more than 30 workers were on the construction site, but plaintiff and his coworker were the only ones working on the mezzanine.

Plaintiff and his coworker attempted to bring drywall to the mezzanine using a 3-foot-wide scissor lift.[13]  The 6-foot-long safety cable blocking the opening onto

---

[13] A scissor lift is used to lift workers, materials, and equipment to elevations. It is attached to a moving piece of equipment and has a work platform.

(continued…)

6

the mezzanine had to be eased in order for them to bring up the drywall. With the safety cable lowered, 3 feet of open space were left unprotected. On their first run, plaintiff's coworker stepped from the scissor lift onto the mezzanine holding one end of a sheet of drywall. Plaintiff came behind him. When plaintiff stepped onto the mezzanine, he lost his balance. The drywall that he was holding broke, and he fell through the unprotected space to the level below.

There should be no dispute that the mezzanine was dangerously high, given that as it was 12 to 17 feet above the lower level. Because it was more than 6 feet high, fall protection was required for the workers' safety. The lower courts correctly noted that workers from several trades had to work at the mezzanine level

---

(…continued)
In the picture submitted by plaintiff, the scissor lift appears on the floor to the left of the mezzanine.



at the same time. Hence, an issue of fact was created concerning whether the mezzanine was a common area. Various subcontractors needed to get onto the mezzanine numerous times over several days in order to work and load materials and equipment. By a rough estimate, a dozen workers, including carpenters, electricians, plumbers, painters, and at least four people to load heating, ventilation, and cooling equipment needed to get onto the mezzanine. After the wooden frame for the drywall was put in, there were only two ways to reach the mezzanine: by ladder and by scissor lift. All these workers faced the danger of falling from the mezzanine while loading materials or equipment. Accordingly, an issue of fact arose about whether a significant number of workers employed by various subcontractors were exposed to the same risk.

There is no dispute that the safety cable did not provide sufficient protection, given that it had to be lowered to enable access to the mezzanine. One of the questions that plaintiff raised is whether any other type of perimeter protection was feasible. In response to defendant's "Safety Hazard Notification," plaintiff's employer indicated that a wood-framed structure with a removal gate should have been used. The structure could have protected people from falling through the open space left after the cable was lowered. It is unclear whether such protection was feasible. Thus, the Court of Appeals correctly decided that a question of fact existed about the availability of adequate perimeter protection.

Defendant argues that the only feasible safety protection was the use of a personal fall-protection device, such as a double-lanyard harness system hooking

8

the worker to an anchorage point. It is undisputed that plaintiff was not wearing such a device. Plaintiff's supervisor expressed doubt about a lanyard, saying that, if plaintiff had worn one, he could not have stepped off the scissor lift onto the mezzanine.

Assuming that a personal fall-protection device could have been used, the question arises whether defendant took reasonable steps within its supervisory authority to require such a device. The project-manual provisions for defendant's "On-Site Project Safety and Loss Control Program" state that each subcontractor "will supply the proper equipment, take the necessary precautions to maintain the equipment according to current regulations and specifications, and accept responsibility to ensure that the necessary safety equipment is supplied and used when required." The manual further states: "The use of safety belts/harnesses and lanyards securely attached to an approved anchorage point when working from unprotected high places is mandatory." Defendant's manual makes clear that defendant required that personal fall protection be used when no other protection was available. It shifted to the subcontractors the responsibility for providing all such safety equipment and ensuring its use.

In *Funk*, the Court observed that, from an economic and practical standpoint, placing the responsibility for work safety in common areas on the general contractor will "render it more likely that the various subcontractors . . . will implement or that the general contractor will himself implement the necessary

9

precautions and provide the necessary safety equipment in those areas."[14]  It is doubtful that, under *Funk*, a general contractor can entirely absolve itself of liability by shifting to its subcontractors all responsibility for implementing workplace safety and for providing safety equipment.

Furthermore, a question of fact exists concerning whether, under his supervisory authority, defendant's construction supervisor should have been expected to enforce defendant's safety policy.  The construction supervisor knew that plaintiff and his coworker planned to use the scissor lift to hoist drywall onto the mezzanine.  He also knew that they needed to lower the safety cable to do so.  The question is whether the construction supervisor should have inquired about the safety protection that the carpenters planned to use when the safety cable was down.

Defendant argues that its supervisor had no authority to tell the workers how to do their jobs.  That is not the issue.  Rather, the issue is whether the construction supervisor had authority to supervise the workers' safety and to enforce the general contractor's safety policy.

Defendant also argues that a general contractor cannot be expected to monitor whether each worker on the jobsite wears individual safety protection.  Were such monitoring at issue, defendant might be correct because of the burden it would place on the general contractor.  But, on the facts of this case, defendant's

---

[14] *Funk*, 392 Mich at 104.

10

construction supervisor was in direct personal contact with plaintiff and his coworker. He spoke with them personally as they prepared to ascend to the mezzanine. It might not be unreasonable to expect the supervisor to inquire after their safety under the circumstances.

More importantly, such an expectation is hardly unreasonable in light of defendant's safety policy. Its safety-and-loss-control program makes a difference only if it is enforced. Certainly, a safety policy can be enforced by issuing a citation to a subcontractor after an injury occurs, which is what defendant did here. But it is reasonable to expect that a general contractor will enforce its own policy to *prevent* noncompliance and to *avoid* injury before it occurs.

### III

I would affirm the lower courts' judgments denying defendant's motion for summary disposition and would remand the case to the trial court for further proceedings. This resolution of the case would not be tantamount to imposing strict liability on the general contractor. On the contrary, it acknowledges that reasonable minds can differ about the sufficiency of the steps the general contractor took in this case. Certainly, a jury could find that the general contractor took reasonable steps, but I would not make that determination as a matter of law. It is properly an issue for the trier of fact to resolve.

Marilyn Kelly
Michael F. Cavanagh

11