# STATE OF MICHIGAN

# COURT OF APPEALS

RONALD GRAVES,

        Plaintiff-Appellee,

v

KMART CORPORATION,

        Defendant/Cross-Defendant/Cross-
        Plaintiff-Appellant,

and

MENOWITZ MANAGEMENT CORPORATION,

        Defendant/Cross-Plaintiff-
        Appellant,

and

SPG PROPERTY SERVICES, INC., doing
business as SNOW PLOW GROUP,

        Defendant/Cross-Defendant,

and

TOP CALIBER LAWN & LANDSCAPE, LLC,
and CEI ROOFING SYSTEMS, INC.,

        Defendants.

UNPUBLISHED
August 22, 2017

No. 332184
Oakland Circuit Court
LC No. 2015-146242-NO

RONALD GRAVES,

        Plaintiff,

v

KMART CORPORATION,

No. 334245
Oakland Circuit Court
LC No. 2015-146242-NO

Defendant/Cross-Defendant/Cross-Plaintiff-Appellant,

and

MENOWITZ MANAGEMENT CORPORATION,

Defendant/Cross-Plaintiff,

and

SPG PROPERTY SERVICES, INC., doing business as SNOW PLOW GROUP,

Defendant/Cross-Defendant/Appellee,

and

TOP CALIBER LAWN & LANDSCAPE, LLC, and CEI ROOFING SYSTEMS, INC.,

Defendants.

Before:  SAAD, P.J., and SERVITTO and GADOLA, JJ.

PER CURIAM.

In this case predicated on a slip and fall outside a Kmart retail store, defendants Kmart Corporation (Kmart) and Menowitz Management Corporation (MMC) appeal in Docket No. 332184 the trial court's order that denied its motion for summary disposition under MCR 2.116(C)(10).[1]  In Docket No. 334245, Kmart appeals the trial court's order that granted summary disposition in favor of defendant SPG Property Services, Inc. (SPG) on Kmart's cross-claims for indemnification and breach of contract, and the trial court's subsequent order that granted summary disposition to SPG on the remainder of Kmart's cross-claims.  In Docket No. 332184, we reverse and remand for the trial court to grant Kmart's motion for summary disposition because the hazard was open and obvious as a matter of law.  In Docket No. 334245, we affirm.

---

[1] The Supreme Court remanded for us to consider the appeal in Docket No. 332184 as on leave granted.  *Graves v Kmart Corp*, 499 Mich 973; 880 NW2d 785 (2016).

# I. BASIC FACTS

On December 30, 2012, plaintiff slipped on a patch of ice on a sidewalk as he attempted to enter Kmart's White Lake store and suffered a broken ankle. Plaintiff testified that the conditions on the day he fell were overcast, with a temperature hovering just below freezing. He also noted that it had not snowed recently and the roads were clear. Plaintiff stated that he did not see ice or snow on the ground in the store's parking lot. But plaintiff stated that, while he did not notice "ice" near the entrance, he noticed that the area was "damp." Indeed, photographs submitted to the trial court show that the parking lot was clear but the area near the trash can where plaintiff fell was noticeably damp.

Leah Hiter witnessed the fall. She testified that when she came to the store, the parking lot was clear and it appeared that someone had salted previously. However, she noticed that there was "a lot" of ice near the entrance. There was so much ice present that she was concerned for people's safety and immediately brought the ice to the attention of an employee inside the store. Upon returning to the entrance to show the employee the ice, Hiter saw plaintiff slip and fall.

Kmart had contracted with SPG for snowplowing services for locations that included the White Lake store. In pertinent part, the contract provided that SPG would remove snow from the parking lots and apply ice melt to the sidewalks when an accumulation of snow exceeded two inches, or upon request by Kmart. The contract also provided that SPG would indemnify or defend Kmart against any "Claims."[2]

Plaintiff filed suit for premises liability and alleged in his amended complaint that he "slipped and fell on a patch of black ice outside [Kmart's] door that had accumulated as a result of an overflowing defective drainage/gutter system on [Kmart's] building."[3] Kmart thereafter

---

[2] The contract defines "Claims" as constituting any claim

> arising out of or related to the following: (i) any acts, errors or omissions of Contractor, its employees, agents or subcontractors, or any other person or entity for whom Contractor is responsible in connection with the performance of the Services under this Agreement, whether or not lawful or within the scope of their employment, (ii) the failure of Contractor, its employees, agents or subcontractors to comply with any law, statute, ordinance, code, rule, regulation or requirement of a public authority or any inquiry or investigation of any public authority of Contractor's Services, (iii) the Services provided by Contractor, its employees, agents or subcontractors, or (iv) any breach by Contractor of any obligation of Contractor under this Agreement.

[3] Although not before us, plaintiff also brought claims of premises liability against the other defendants as well, including defendant SPG. But plaintiff's claims against these other defendants were dismissed because these defendants did not have possession of the premises, which is necessary for a premises liability claim.

asserted a cross-claim against SPG. Kmart alleged that the contract between it and SPG required SPG to defend Kmart against and indemnify Kmart from any claims arising out of SPG's negligence.

Kmart moved for summary disposition on plaintiff's claims under MCR 2.116(C)(10) and asserted that the ice was open and obvious and that it had no prior notice of the condition. The trial court denied Kmart's motion and found that that there was a question of fact regarding whether a reasonable person would have observed the ice on casual inspection. Kmart also moved for summary disposition on its cross-claim of contractual indemnification against SPG and asserted that plaintiff had slipped and fallen on a sidewalk that SPG was responsible to keep clear. The trial court denied Kmart's motion and granted summary disposition to SPG and reasoned that the parties' contract did not require SPG to remove ice that formed as a result of water dripping from the building. The trial court also dismissed Kmart's allegation that SPG had failed to honor its commitment to defend on the basis that plaintiff's allegations were not "Claims," as that term is defined in the parties' contract. Following the trial court's grant of summary disposition, SPG moved for summary disposition on the remainder of Kmart's cross-claims, which included claims of breach of contract, common-law indemnification, and contribution. The trial court granted SPG's motion and ruled that there was no evidence that SPG had breached its contract or was at fault for plaintiff's injury.

## II. STANDARDS OF REVIEW

We review de novo the trial court's decision on a motion for summary disposition. *Maiden v Rozwood*, 461 Mich 109, 118; 597 NW2d 817 (1999). MCR 2.116(C)(10) entitles a party to summary disposition if "there is no genuine issue as to any material fact, and the moving party is entitled to judgment . . . as a matter of law." The trial court must consider all the documentary evidence in the light most favorable to the nonmoving party. *Maiden*, 461 Mich at 120. A genuine issue of material fact exists if, when viewing the record in the light most favorable to the nonmoving party, reasonable minds could differ on the issue. *Gorman v American Honda Motor Co, Inc*, 302 Mich App 113, 116; 839 NW2d 223 (2013).

We also review de novo the proper interpretation of a contract, *Klapp v United Ins Group Agency, Inc*, 468 Mich 459, 463; 663 NW2d 447 (2003), and the legal effect of contractual provisions, *DeFrain v State Farm Mut Auto Ins Co*, 491 Mich 359, 366-367; 817 NW2d 504 (2012).

## III. DOCKET NO. 332184

Kmart and MMC contend that the trial court improperly denied their motion for summary disposition because there was no question of fact regarding whether the icy condition on which plaintiff slipped was open and obvious. We agree.

Plaintiff was a business invitee, which means that defendants owed a duty to exercise reasonable care to warn or protect him from unreasonable risks of harm that stem from dangerous conditions on the land. *Ghaffari v Turner Constr Co*, 473 Mich 16, 21; 699 NW2d 687 (2005); *Bertrand v Alan Ford, Inc*, 449 Mich 606, 609; 537 NW2d 185 (1985). However, this duty does not require a landowner to protect an invitee form dangers that are "open and

-4-

obvious." *Benton v Dart Props, Inc*, 270 Mich App 437, 440-441; 715 NW2d 335 (2006). The rationale for the doctrine is that "there should be no liability for failing to warn someone of a risk or hazard [that] he appreciated to the same extent as a warning would have provided." *Glittenberg v Doughboy Recreational Indus, Inc*, 436 Mich 673, 683-684; 462 NW2d 348 (1990) (quotation marks and citation omitted). Further, invitors "are not absolute insurers of the safety of their invitees." *Bertrand*, 449 Mich at 614.

Whether a hazard is open and obvious is preliminarily a question of law. *Knight v Gulf & Western Props, Inc*, 196 Mich App 119, 126; 492 NW2d 761 (1992), citing *Riddle v McLouth Steel Prods Corp*, 440 Mich 85, 95-97; 485 NW2d 676 (1992). A plaintiff's failure to see a hazardous condition does not eliminate the applicability of the open and obvious doctrine because the test is objective: whether an average user of ordinary intelligence would have discovered the hazard upon casual inspection. *Watts v Mich Multi-King, Inc*, 291 Mich App 98, 103; 804 NW2d 569 (2010); *Novotoney v Burger King Corp (On Remand)*, 198 Mich App 470, 474-475; 499 NW2d 379 (1993).

Here, plaintiff fell around 5:30 p.m. on December 30, 2012. Plaintiff testified that it was overcast and the temperature hovered "just below freezing" that day. Plaintiff testified that the area where he fell merely looked damp instead of icy. He further stated that nothing prevented him from seeing the dampness before he fell. Although the photos taken shortly after the fall that were provided to this Court are not of the best quality, a large, damp area near the store entrance is nonetheless easily apparent in the photos. Considering that the temperature was below freezing that day, the weather conditions in conjunction with the visible dampness on the pavement were sufficient to alert plaintiff of a potentially hazardous condition. The fact that he did not perceive a damp area as being hazardous when temperatures were below freezing is not dispositive because we hold that an average user with ordinary intelligence would have been able to conclude that dampness or water on the ground when temperatures have been hovering below freezing the entire day would constitute a slippery hazard. See *Slaughter v Blarney Castle Oil Co*, 281 Mich App 474, 479; 760 NW2d 287 (2008); *Royce v Chatwell Club Apartments*, 276 Mich App 389, 392-393; 740 NW2d 547 (2007). Again, there is no question that plaintiff saw the damp area on the ground.

Moreover, Hiter's testimony indicated that the ice was visible upon casual inspection. Hiter testified that "[t]here was a lot of ice" on the sidewalk in front of the entrance and that the ice appeared in different patches "throughout the front sidewalk area." In fact, after noticing the ice, she walked directly to the customer service counter to alert a store employee that he "needed to salt before somebody fell." After plaintiff fell, Hiter was able to see ice in the area where he fell. The trial court opined that Hiter's testimony was "equivocal" because she later testified that she could see some, "but not all, of [the ice]." This single statement is insufficient to somehow reflect that some of the ice was not discoverable upon casual inspection. The questioning leading up to this statement is as follows:

> *Q.* All right. Now, when you said you were approaching the entrance –
>
> *A.* Yes.
>
> *Q.* – you saw ice: is that correct?

*A.* Yes.

*Q.* Where was the ice located?

*A.* It was different patches throughout the front sidewalk area.

* * *

*Q.* All right. And was there – I see snow here [referring to photo], but was it [sic] also ice?

*A.* Yes, there were multiple patches of ice.

*Q.* In addition to the snow that's shown here?

*A.* Yes.

* * *

*Q.* Okay. Was there ice up on the sidewalk once you stepped beyond where these yellow road marking are?

*A.* Yes.

*Q.* All right. When you approached the entrance[,] *before you approached this area where the yellow marking are on this photograph,*[4] could you observe the snow and ice?

*A.* Some of it, yes, but not all of it. [Emphasis added.]

Hiter's statement that not all of the ice was observable *before she approached the area*, i.e., from the parking lot (and arguably beyond the yellow-marked area), is not evidence that the hazard was not discoverable upon casual inspection at a closer range. Indeed, Hiter's testimony shows that she had no problem viewing the ice once she was closer. Moreover, it is irrelevant whether Hiter was able to see "some, but not all," of the ice. The evidence clearly indicates that the amount observable was sufficient to put people on notice that the area was hazardous. Consequently, the trial court erred when it relied on this statement as being equivocal on whether the ice was discoverable upon casual inspection.

We note that if there are "special aspects" that make an open and obvious condition "unreasonably dangerous," then the premises possessor's duty to warn or repair is not abrogated. *Lugo v Ameritech Corp*, 464 Mich 512, 517; 629 NW2d 384 (2001). There are two types of

---

[4] The "yellow markings" are a diagonal pattern painted in the parking lot in front of the store's entrance that serves as a warning to vehicles that this is a pedestrian zone. The sidewalk, where plaintiff fell, is located between these markings and the store's entrance.

-6-

special aspects that will render an otherwise open and obvious hazard actionable: the hazard is "effectively unavoidable" or poses "an unreasonably high risk of severe harm." *Id.* at 518. Plaintiff asserts that special aspects existed because the condition was located at the entrance of the store and, accordingly, was effectively unavoidable. However, plaintiff's argument lacks merit because, according to Hiter, if one is looking, one could navigate around the ice patches and enter the store. Thus, the evidence shows that the condition was not effectively unavoidable, and the special aspects exception does not apply.

Accordingly, we hold that the trial court erred when it denied Kmart's and MMC's motion for summary disposition. We reverse and remand for the entry of summary disposition in favor of Kmart and MMC because the hazard was open and obvious and no special aspects existed.

IV. DOCKET NO. 334245

Kmart also appeals the trial court's various orders that granted summary disposition to SPG on Kmart's cross-claims. Kmart argues that the trial court improperly dismissed its claims for indemnity, defense, and breach of contract.

As an initial matter, we find that the trial court improperly turned to Illinois law to guide its analysis. The contract does have a choice of law provision that specifies that the contract is to be interpreted and enforced according to the precepts of Illinois law. But there is no evidence that SPG or Kmart have a substantial relationship with Illinois. See *Chrysler Corp v Skyline Indus Servs, Inc*, 448 Mich 113, 126-127; 528 NW2d 698 (1995). Sears Holdings Management Corporation, which does business as Kmart, is a Delaware Corporation, and SPG is a Michigan Corporation. The contract between SPG and Kmart involves services limited to southeastern Michigan. And the slip and fall underlying all of the claims occurred in White Lake, Michigan. However, this error does not require reversal because Illinois and Michigan law is similar on the dispositive questions presented.

Because we have held that Kmart is not liable to plaintiff for an injury caused by a hazard that was open and obvious, Kmart's claims for indemnification (based on the contract and based on the common law) and contribution against SPG are moot.[5]

Kmart also argues that, although SPG may not need to indemnify Kmart, SPG nonetheless must defend Kmart. While the contractual duty to defend is separate from the duty to indemnify, the contract between SPG and Kmart provides that SPG shall defend Kmart "from and against all allegations (even though such allegations may be false, fraudulent or groundless) asserted in any and all Claims, whether actual or alleged and whether or not Contractor's indemnity obligations . . . shall apply." Resolution of this argument turns on the meaning of the word "Claims." Generally, the definition of the word "claim" is broad and includes the "aggregate of operative facts giving rise to a right enforceable by a court and any right to

_____

[5] In any event, we have reviewed the issues and find that Kmart's arguments lack merit.

payment or to an equitable remedy." *Miller-Davis Co v Ahrens Const, Inc*, 495 Mich 161, 175-176; 848 NW2d 95 (2014) (quotation marks, citation, and emphasis omitted). However, the contract defines "Claims" as any circumstances that meet any of the four criteria set in § 4.1, which include:

> (i) any acts, errors or omissions of Contractor . . . in connection with the performance of the Services under this Agreement, whether or lawful or not within the scope of their employment, (ii) the failure of Contractor . . . to comply with any law . . . , (iii) the Services provided by Contractor, its employees, agents or subcontractors, or (iv) any breach by Contractor of any obligation of Contractor under this agreement.

When a contract clearly defines a term, we must afford that term its stated meaning. *Farm Bureau Mut Ins Co of Mich v Nikkel*, 460 Mich 558, 567; 596 NW2d 915 (1999). And because plaintiff's underlying claim does not allege an omission of SPG in connection with the performance of services or a breach of the contract on the part of SPG, the allegations necessarily do not involve "Claims" as contemplated in the contract. As such, plaintiff's allegations cannot be construed as an allegation that SPG failed to perform under the contract. Thus, SPG's duty to defend is not triggered.[6]

## V. CONCLUSION

In Docket No. 332184, we reverse the denial of Kmart's and MMC's motion for summary disposition and remand for the trial court to enter an order that grants the motion based on the open and obvious doctrine. We do not retain jurisdiction. Appellants, Kmart and MMC, may tax costs as the prevailing party. MCR 7.219.

In Docket No. 334245, we affirm. SPG may tax costs as the prevailing party. MCR 7.219.

/s/ Henry William Saad
/s/ Deborah A. Servitto
/s/ Michael F. Gadola

---

[6] We note that this interpretation of the contract does not render nugatory or surplusage § 4.4's statement that SPG must defend Kmart "whether or not [SPG's] indemnity obligations . . . shall apply." Section 4.1 provides an exception under which SPG need not indemnify Kmart for actions caused by the sole negligence of Kmart or its employees. The cited phrase in § 4.4 thus operates to require SPG to defend—but not indemnify—Kmart in situations in which a plaintiff brings "Claims" but a court determines that the injury was due to Kmart's sole negligence. Accordingly, interpreting § 4.4 to only require SPG to defend Kmart against "Claims," as defined, does not render any contractual language nugatory because there are narrow circumstances under which SPG would be required to defend, but not indemnify, Kmart.

-8-